## Henry Lee Wiles v. Commonwealth of Virginia.

October 14, 1968.

Record No. 6767.

Present, All the Justices.

*William A. Dervishian* for plaintiff in error.

*M. Harris Parker, Assistant Attorney General (Robert Y. Button, Attorney General; Walter H. Ryland, Assistant Attorney General,* on brief), for defendant in error.

Eggleston, C.J., delivered the opinion of the court.

On December 15, 1966, about 2:00 A.M., C. D. Coleman, a detective in the vice squad of the city of Richmond, obtained from a justice of the peace a warrant authorizing him to search the dwelling of Henry Lee Wiles at 204 S. Linden Street in the city of Richmond. Shortly thereafter Coleman and another detective went to the address, knocked on the door and were admitted by Wiles. Coleman identified himself as a police officer and told Wiles that he and his companion had a warrant authorizing them to search his residence for narcotics.

The officers then searched the premises which consisted of a two-story apartment occupied by Wiles, his wife and four children. On the top shelf in a hall closet directly across from the master bedroom the officers found several bottles containing narcotics. Wiles was immediately placed under arrest and was subsequently indicted for the unlawful and felonious possession of narcotics. Because of the defendant's indigency counsel was appointed to represent him. Upon arraignment he pleaded not guilty and by consent the lower court proceeded to hear and determine the matter without a jury.

At the commencement of the proceedings the defendant, by counsel, moved the court to suppress the evidence of the narcotics found on his premises, on the ground that they had been obtained as the result of illegal search and seizure. This motion was overruled and the evidence was admitted at the trial. After hearing this and the other evidence the court found the defendant guilty of the illegal possession of narcotics, as charged in the indictment, and sentenced him to confinement in the penitentiary for twenty years and assessed a fine of $1,000 against him.

On the writ of error granted the defendant he contends that (1) the lower court erred in not suppressing the evidence of the narcotics found on his premises, because, he says, they were obtained by illegal search and seizure; and (2) the evidence was insufficient to sustain a finding that he was guilty of the illegal possession of narcotics. In our opinion, the first assignment is well made and it is not necessary that we consider the second.

The defendant contends that the affidavit upon which the search warrant was issued was insufficient in that it did not state sufficient facts and circumstances constituting probable cause for the issuance of the warrant, and that the search of his dwelling and the seizure thereform of the alleged narcotics violated the rights guaranteed to him by the Fourth Amendment to the Constitution of the United States and Section 10 of the Constitution of Virginia. Consequently, he says, the alleged narcotics seized on his premises should not have been admitted in evidence at his trial.

The relevant portion of the affidavit on which the warrant was obtained reads thus:

"The material facts constituting probable cause for issuance of the warrant.

"1.   Information from informant who has given reliable infor-

mation in the past that Henry Wiles residing at this address has narcotics in his possession at this time.

"2. This Division has received several complaints that this man is a user of drugs."

The Fourth Amendment to the Constitution of the United States, made applicable to the States by the Fourteenth Amendment, provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Section 10 of the Constitution of Virginia provides:

"That general warrants, whereby an officer or messenger may be commanded to search suspected places without evidence of a fact committed, or to seize any person or persons not named, or whose offense is not particularly described and supported by evidence, are grievous and oppressive, and ought not to be granted."

Code § 19.1-85 [Repl. Vol. 1960] provides in part: "No search warrant shall be issued until there is filed with the officer authorized to issue the same an affidavit of some person * * * alleging briefly material facts, constituting the probable cause for the issuance of such warrant * * * . * * * No such warrant shall be issued on an affidavit omitting such essentials, * * * ."

In *Zimmerman* v. *Town of Bedford,* 134 Va. 787, 801, 802, 115 S. E. 362, 365 (1922), we pointed out that the requirements of this statute are the same as those of the Fourth Amendment to the Federal Constitution. Hence, the question presented to us in the present case is whether the affidavit upon which the search warrant was issued complies with the requirements of the Fourth Amendment and the Virginia statute [Code § 19.1-85].

The leading case on the requirements of the Fourth Amendment for obtaining a valid state search warrant is *Aguilar* v. *State of Texas,* 378 U. S. 108, 84 S. Ct. 1509, 12 L. ed. 2d 723 (1964). That case involved the validity of a search warrant issued by a state magistrate based upon an affidavit which read in part: "Affiants have received reliable information from a credible person and do believe that heroin * * * and other narcotics * * * are being kept at the above described

premises for the purpose of sale and use contrary to the provisions of the law." 378 U. S. at 109.

The opinion reaffirmed the court's prior holding that in passing on the validity of a search warrant the reviewing court may consider only the information brought to the magistrate's attention in the affidavit. (378 U. S. at 109, Note 1.) It also reaffirmed the principles stated in *Nathanson* v. *United States*, 290 U. S. 41, 47, 54 S. Ct. 11, 13, 78 L. ed. 159 (1933), that: " 'Under the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from *facts or circumstances* presented to him under oath or affirmation. Mere affirmance of belief or suspicion is not enough.' " 378 U. S. at 112.

The opinion pointed out that the affidavit involved in *Aguilar* had failed to meet the constitutional requirements because, it said, it " 'contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein' " and no " 'affirmative allegation' that affiant's unidentified source 'spoke with personal knowledge;' " that "[f]or all that appears, the source here merely suspected, believed or concluded that there were narcotics in petitioner's possession," said that "[t]he magistrate * * * could not 'judge for himself the persuasiveness of the facts relied on * * * to show probable cause.' " (378 U. S. at 113, 114.) Hence, it concluded that the affidavit did not provide sufficient basis for a finding of probable cause and the search warrant should not have been issued.

The opinion in *Aguilar* thus summarized the basic requirements of the Fourth Amendment for a proper allegation of probable cause in such a case:

> "Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, *Jones* v. *United States*, 362 U. S. 257, 80 S. Ct. 725, 4 L. ed. 2d 697, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see *Rugendorf* v. *United States*, 376 U. S. 528, 84 S. Ct. 825, was 'credible' or his information 'reliable.' " 378 U. S. at 114.

We find that the affidavit involved in the present case is subject to substantially the same infirmities as those in the affidavit involved

in *Aguilar*. In the present case the first item for the "material facts" which the affiant says constituted probable cause for the issuance of the warrant is: "Information from informant who has given reliable information in the past that Henry Wiles residing at this address has narcotics in his possession at this time." This item does not state what the information consists of nor does it say whether the information was based on the personal knowledge of the informant or the personal knowledge of the affiant. Again, there is no statement of the underlying circumstances supporting affiant's conclusion that the informant is credible, other than that he has "given reliable information in the past." There is no statement as to what this past information was or when it was given, whether recently or many years ago.

The second item of the alleged "material facts," that "[t]his Division has received several complaints that this man is a user of drugs," adds no support to the first item. None of the "several complaints" is detailed nor is the magistrate who issued the warrant told whether they were recent or made long ago. There is no recital that any informant or complainant had seen the defendant using drugs or in possession of them or attempting to sell them.

In the final analysis, the affidavit is merely a statement of the conclusion of the affiant, or that of the informant, that the defendant was in possession of narcotics at that time. Thus, it is not a sufficient allegation of "material facts, constituting the probable cause for the issuance" of a search warrant, required by Code § 19.1-85 and the provisions of the Fourth Amendment as interpreted in *Aguilar*. Consequently, the evidence obtained as a result of the search warrant was inadmissible in the defendant's trial. *Aguilar* v. *State of Texas, supra*, 378 U. S. at 115, 116.

None of the cases cited by the Attorney General convinces us that the affidavit upon which the search warrant was based in the present case meets the requirements of *Aguilar*. *United States* v. *Ventresca*, 380 U. S. 102, 85 S. Ct. 741, 13 L. ed. 2d 684 (1965), held that an affidavit which was quite detailed and specific, and which set forth many of the underlying circumstances supporting the affiant's belief that the defendant was engaged in the illegal distilling of liquor, met the requirements of *Aguilar*. Similarly, in *Jones* v. *United States*, 362 U. S. 257, 80 S. Ct. 725, 4 L. ed. 2d 697 (1960), decided before *Aguilar*, the affidavit detailing the underlying circumstances was held sufficient.

In *Spinelli* v. *United States*, 382 F. 2d 871 (8th Cir. 1967), a divided court upheld the validity of a search warrant based on an affidavit signed by a special agent of the F.B.I. authorizing the search of the defendant's premises for gambling paraphernalia. The affidavit recited in detail the defendant's repeated trips to and from an apartment, not his home, where he maintained two telephones with different numbers. It further recited that agents of the F.B.I. had been informed by a reliable informant that the defendant was operating a handbook and accepting wagers by means of the telephones. It also recited that the defendant was known "to this affiant" and to federal law enforcement agents as a bookmaker, a gambler and an associate of gamblers. The majority opinion held that this affidavit satisfied the requirements of *Aguilar* (382 F.2d at 883) while the minority opinion reasoned that it did not. That case is now pending in the United States Supreme Court on a writ of certiorari limited to the review of the constitutional validity of the search and seizure. 88 S. Ct. 1834, 20 L. ed. 2d 853.

*Bean* v. *People*, Colo., 436 P. 2d 678 (1968), held that an affidavit detailing many underlying circumstances met the requirements of *Aguilar* and justified the issuance of a warrant for the search of the defendant's basement apartment which resulted in the seizure of marijuana.

In the case before us, because of the error of the lower court in admitting the evidence obtained as a result of the illegal search warrant, the judgment complained of is reversed and the case remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*

HARRISON, J., dissenting

I would affirm the conviction of the defendant for I do not interpret *Aguilar* or *Nathanson* as requiring the action here taken by the majority.

The search for narcotics was based upon a judicial determination that there was substantial basis to conclude that probable cause existed. The application for a search warrant was made by a Richmond police officer, and, in support thereof, the officer made to the justice of the peace a full and complete affidavit which recited the following facts:

(1) The offense involved—possession of narcotics;

(2) The name of the suspect—Henry Lee Wiles;

(3) The place where the narcotics were stored—the dwelling house of Wiles;

(4) The location and address of the dwelling house—204 South Linden Street, Richmond, Virginia;

(5) The material facts constituting probable cause, to wit: (a) Information—from an informant who had given reliable information in the past—that Wiles had narcotics in his possession *at this time;* (b) That the Narcotics Division of the Richmond Police Department had previously received several complaints that Wiles was a user of drugs.

One distinguishing feature of the affidavit is that the police officer who made the affidavit specified the reason why his informant was a reliable person.

More important, the justice concluded that the informant was not just acting on suspicion that Wiles had narcotics in his possession. The informant made a flat, positive and unequivocal statement that Wiles had narcotics in his possession *at this time.* "At this time" means *now, presently, at this very moment.* The only possible implication from such a statement is the informant was speaking and acting from personal knowledge.

The reliability of informant was established by his past satisfactory record of performance. When the search warrant was executed immediately after being issued, it developed that Wiles did have narcotics in his possession and "at that time".

In *Aguilar,* the affidavit recited only that the affiant had "received reliable information" from a "creditable person" and "believed" that narcotics were being kept on the premises of a suspect. The difference between that affidavit and the one with which we are confronted is obvious. The affidavit in *Aguilar* represented only a conclusion and a belief by the officer that narcotics were stored. This conclusion was reached from information given by an informant. The nature and scope of the information and whether obtained by the informant from personal observance, or from another, are not recited.

In the instant case the officer recites in the affidavit why the informant is reliable. The affidavit given here was not because the officer suspected and concluded, from defendant's reputation as a user,

that narcotics were in his possession. It was for this, and because an informant, previously established as trustworthy, had stated *unequivocally* that narcotics were then stored in the defendant's home, and were in his possession at the very moment the affidavit was made and the warrant was issued.

In *Nathanson* a warrant was issued upon the sworn allegation that the "affiant had cause to suspect and does believe" that certain merchandise was in a specified location. There the affidavit was based upon "mere affirmation of suspicion and belief" without any statement of adequate supporting facts, and the court held that was not enough.

The affidavit which was the basis of the search warrant against Wiles indicated the *source* for the affiant's belief, and it set forth the *basis* upon which a judicial finding of probable cause was made. The affidavit therefore met the test of *Giordenello* v. *United States,* 357 U. S. 480, 78 S. Ct. 1245, 2 L. ed. 2d 1503, quoted from so extensively in *Aguilar.*

The justice issuing the search warrant here was justified in concluding that the credibility of the informant for giving reliable information had been established, and that the informant spoke with personal knowledge since he made a positive assertion that the narcotics were then and there, and at that time, in the possession of Wiles.

*Aguilar* recognizes that an affidavit may be based on hearsay information and need not reflect the direct personal observation of the affiant. It is equally as well-established that informants may be, and are effectively, used by the police in the apprehension of criminals. To require that affidavits particularize, and be more detailed than is the affidavit in the instant case, would seriously curtail the use of informants for their identity would be disclosed. Here the informant might have been a relative of the accused, the person who sold the narcotics to him, a recent purchaser of narcotics from the defendant, a next door neighbor or a drinking companion. If the affidavit had disclosed the manner, means or method used by the informant to obtain his information, or the time it was obtained, it would have provided a clue by which his identity could have been determined by the defendant and the criminal element in the community. When this occurs, the usefulness of that particular informant to the police is ended.

*Aguilar* was decided by a divided court. Mr. Justice Clark, joined by Mr. Justice Black and Mr. Justice Stewart, dissented, and observed as follows:

"Believing that the Court has substituted a rigid, academic formula for the unrigid standards of reasonableness and 'probable cause' laid down by the Fourth Amendment itself—a substitution of technicality for practicality—and believing that the Court's holding will tend to obstruct the administration of criminal justice throughout the country, I respectfully dissent." 378 U. S. 108, 122, 84 S. Ct. 1509, 1518, 12 L. ed. 2d 723, 733.

Any extension of *Aguilar* will further frustrate and obstruct law enforcement officers in their efforts to enforce the criminal laws. If such extension is to be made, I would not have it done by this court. I must therefore dissent.

BUCHANAN, J. and CARRICO, J., join in this dissent.