## Richmond

DONALD S. GUZEWICZ v. COMMONWEALTH OF VIRGINIA.

THEODORE J. GUZEWICZ v. COMMONWEALTH OF VIRGINIA.

March 6, 1972.

Record No. 7771 and 7772.

Present, Snead, C.J., Carrico, Gordon, Harrison, Cochran and Harman, JJ.

*Gerald F. Dalton* (*Scaife & Kinnamon*, on brief), for plaintiff in error in Record Nos. 7771 and 7772.

*James E. Kulp, Assistant Attorney General* (*Andrew P. Miller, Attorney General*, on brief), for defendant in error in Record Nos. 7771 and 7772.

COCHRAN, J., delivered the opinion of the court.

Defendants, Donald S. Guzewicz and Theodore J. Guzewicz, were found guilty by a jury of possession of various controlled drugs in violation of the Drug Control Act. Fines and jail and penitentiary

sentences were imposed by the judgment orders entered on the jury verdicts. We granted defendants writs of error.

The sole question for determination is the validity of the search warrant authorizing a search of the Guzewicz apartment in the City of Fredericksburg, during which controlled drugs and narcotics paraphernalia were found and seized.

At the commencement of the trial a motion was made to suppress the evidence which had been seized on the ground that the three affidavits supporting the search warrant were insufficient. This motion was overruled by the trial court.

In pertinent part, the affidavits read as follows:

Affidavit No. 1, executed by J. M. H. Willis, Jr., the Commonwealth's Attorney:

"an informant, personally known to the affiant and known by him to be reliable and to have held a position of confidence and trust, informed this affiant that the premises to be searched are being unlawfully used by the occupants thereof for the illegal possession and distribution of controlled drugs . . . ."

Affidavit No. 2, of John R. Lightner, a Fredericksburg police officer:

"this affiant knows from his own observation that the building in which are located the premises to be searched is frequented by persons known to him to be unlawful users and traffickers of and in controlled drugs . . . ."

Affidavit No. 3, made by Sgt. W. P. Smith, a Fredericksburg police officer:

"an information [sic], who has been known and whose family has been known by this affiant for many years, and is known by this affiant to be reliable, informed this affiant that persons known by her to frequent the premises to be searched have stated in her presence that they frequent said premises for the purpose of securing and using controlled drugs which are there unlawfully possessed and distributed, that said premises are frequented by persons who appear to be drug users and that there are frequent noisy and rowdy gatherings of such persons at said premises. This affiant further

states that he has personal knowledge that said premises are frequented by persons known to him to be unlawful users of controlled drugs."

All three affidavits were sworn to by the affiants on July 30, 1970. The search warrant, issued by a justice of the peace on that date, was executed a few minutes later by Sgt. A. S. Kendall, a Fredericksburg police officer, accompanied by Sgt. Smith, Officer Lightner and other officers. When the search was conducted, both defendants were in their apartment, properly described in the search warrant as Apartment 3, 808 William Street, and quantities of drugs and related paraphernalia were found therein. Defendants were arrested and charged with unlawfully and feloniously possessing with intent to distribute specified controlled drugs.

Defendants contend that the search and seizure violated their Fourth Amendment rights in that the search warrant was based upon affidavits which failed to establish probable cause to search, within the meaning of *Aguilar* v. *Texas*, 378 U.S. 108 (1964) and *Spinelli* v. *United States*, 393 U.S. 410 (1969).[1]

We have recently restated the applicable *Aguilar* test.

"In *Aguilar* the test for determining probable cause in those many instances where the affidavit is based solely or substantially upon an informer's tip was set forth as follows: (1) the affidavit must describe some of the underlying circumstances necessary to enable a neutral and detached magistrate to judge the validity of the informant's conclusion that the narcotics were where he claimed they were; and (2) the affidavit must describe some of the underlying circumstances from which such magistrate can determine that the affiant officer's unnamed informant, whose identity need not be disclosed, was 'credible' *or* his information 'reliable.' "

*Manley* v. *Commonwealth*, 211 Va. 146, 149-50, 176 S.E.2d 309, 312-13 (1970), *cert. denied*, 403 U.S. 936 (1971).

██ In *Spinelli*, the Supreme Court reaffirmed *Aguilar*, but went further in holding that even if a tip alone is insufficient under *Aguilar*, "the other allegations which corroborate the information contained in the hearsay report should then be considered", *Spinelli*,

---

[1] As no objection has been made to the omission from the affidavits of any information as to when the unlawful acts reported therein had occurred we find it unnecessary to consider the effect of this omission.

*supra* at 415, and may provide sufficient support for the tip to create probable cause. *See Gonzales* v. *Beto*, 425 F.2d 963 (5th Cir. 1970), *cert. denied*, 400 U.S. 928 (1970), 400 U.S. 1001 (1971).

The tip related in Affidavit No. 1 clearly fails the *Aguilar-Spinelli* test. The affidavit contains no statement of the underlying circumstances upon which the informant based his conclusion that "the premises to be searched are being unlawfully used by the occupants thereof for the illegal possession and distribution of controlled drugs . . . ." *See Hooper* v. *Commonwealth*, 212 Va. 49, 51-52, 181 S.E.2d 816, 818 (1971). Nor does it furnish any factual support for the affiant's conclusion that the informant was "reliable". No corroborative facts of the sort contemplated by *Spinelli* are set out to bolster the tip. Therefore, Affidavit No. 1 fails in itself to establish probable cause. *See Wiles* v. *Commonwealth*, 209 Va. 282, 285-86, 163 S.E.2d 595, 598 (1968). Furthermore, since it contains only conclusory statements, it cannot be used to support the other affidavits.

For somewhat different reasons, we reach the same conclusion with respect to Affidavit No. 2. Although it purports to relate personal observations, no facts are stated to support the affidavit's conclusion that the persons who frequented the building were "known" drug addicts. A "mere affirmation of suspicion and belief without any statement of adequate supporting facts" has been held to be an improper basis for issuance of a warrant. *Nathanson* v. *United States*, 290 U.S. 41, 46-47 (1933). Moreover, this affidavit alleges that the building, rather than the particular apartment, was frequented by known drug users. As these people could have been visiting any of the nineteen apartments in the building, this allegation would be entitled to no weight even if treated as a statement of fact.

Affidavit No. 3 also contains certain allegations which should be disregarded in determining probable cause. The statement that "said premises are frequented by persons who appear to be drug users" is nothing more than an expression of suspicion. *See McMillon* v. *Commonwealth*, 212 Va. 505, 508, 184 S.E.2d 773, 775 (1971). "Frequent noisy and rowdy gatherings" carry no inherent indicia of illegality, and cannot be validated by the unsupported conclusion that those attending the gatherings were apparent drug users. Furthermore, we accord no probative value to the affiant's statement that he had personal knowledge that the Guzewicz premises were frequented by persons "known to him to be unlawful users of controlled drugs." *Spinelli, supra* at 418-19. Although the diverse views expressed in

*United States* v. *Harris,* 403 U.S. 573 (1971) leave us in doubt as to the continuing validity of this aspect of *Spinelli,* we refrain from relying on such conclusory statements until *Spinelli* is further clarified.

■ We believe, however, that Affidavit No. 3, even when stripped of these allegations, states sufficient facts to establish probable cause for the issuance of the search warrant in question.

In *Manley* v. *Commonwealth, supra,* the affidavit contained no information as to the credibility of the informant. But the affidavit recited that the informant had seen marijuana in specified locations in the described apartment during the "past week" and that during the "past month" he had smoked and purchased marijuana there. We held that the "two pronged test" of *Aguilar* had been met. As the informant's information had been based upon personal observation, the justice of the peace could judge the validity of the informant's conclusion that the drugs were where he said they were. As to the second part of the test, that the credibility of the informant or the reliability of his information must be established, we held that this had been met by the informant's statements against interest. *See Harris, supra* at 583-84; *United States ex rel. DiRienzo* v. *Yeager,* 443 F.2d 228, 230 (3d Cir. 1971).

In *Harris,* where the affidavit was held to be sufficient, the affiant-officer stated that he had interviewed the informant and found him to be "prudent". No other extrinsic facts and circumstances were set forth to establish the informant's credibility. The affiant stated that the suspect had a reputation with him as a trafficker in illegal whiskey, and that another officer had seized illicit whiskey from property under the suspect's control. The affiant then related detailed information furnished by the unnamed informant, which purportedly had been gathered by personal observation and included an admission that the informant had purchased illicit whiskey from the suspect.

All members of the Court agreed that the substance of the tip involved was sufficient to satisfy the first part of the *Aguilar* test because it allegedly set forth recent, personal observations. However, the Court was sharply divided on whether the affidavit set forth sufficient underlying circumstances to establish the credibility of the informant. While there was no unanimity among the majority as to the basis for upholding the affidavit, two alternative reasons emerge from the majority opinion. Three factors were stressed as providing "a substantial basis for crediting the hearsay": 1) The affidavit pur-

ported to relate personal observations; 2) It recited "prior events within the affiant's own knowledge"; and 3) The affiant indicated some prior knowledge of the suspect's reputation. Moreover, in Part III, the majority opinion argued that the reliability of the informant's information was established by the admission against interest contained in the tip.

The dissent found insufficient underlying circumstances to establish the credibility of the informant. In particular, it rejected any reliance on the affiant's knowledge of the suspect's reputation as being inconsistent with *Spinelli*. It also attacked the validity of using an admission against penal interest to establish the reliability of an informant's tip. However, the dissent noted that the situation "where the declarant is not also the informant," *Harris, supra* at 595, was potentially distinguishable.

In the present case, the affidavit sets forth admissions against penal interest made not by the informant, but by those from whom she gathered her information. These admissions, therefore, while affording no support for the credibility of the informant, supply sufficient underlying circumstances to satisfy the first part of the *Aguilar* test. *See Harris, supra* at 595 (dissenting opinion); *Spinelli, supra* at 425 (concurring opinion).

The second part of the *Aguilar* test is satisfied by the affiant's assertion that the informant is reliable, since he sets forth sufficient facts to enable the justice of the peace to judge the validity of his conclusion independently. The credibility of an informant or the reliability of his information need not depend upon his having previously furnished information leading to convictions. *Manley* v. *Commonwealth, supra* at 150, 176 S.E.2d at 313.

Here, the informant and her family had been known by the affiant for many years. Although more extensive background information would be highly desirable, "a common sense and realistic" interpretation of the affidavit, as required by *United States* v. *Ventresca,* 380 U.S. 102, 108 (1965), leads us to the conclusion that it contains information reported by a first time citizen informer whose name was withheld by the affiant.

Public-spirited citizens should be encouraged to furnish to the police information of crimes. Accordingly, we will not apply to citizen informers the same standard of reliability as is applicable when police act on tips from professional informers or those who seek immunity for themselves, whether such citizens are named, *e.g., People*

v. *Glaubman*, 485 P.2d 711 (Colo. 1971), or, as here, unnamed. *See Flynn* v. *Kucharski*, 45 Ill. 2d 211, 258 N.E.2d 329 (1970); *People* v. *Hester*, 39 Ill. 2d 489, 237 N.E.2d 466 (1968), *petition for cert. dismissed*, 397 U.S. 660 (1970).

We find that Affidavit No. 3 meets the requirements of *Aguilar-Spinelli-Harris* and is constitutionally sufficient to establish probable cause for issuance of the search warrant for the Guzewicz apartment.

*Affirmed.*