Richmond

## SCOTT ALLAN FAGAN

### V.

## COMMONWEALTH OF VIRGINIA

January 11, 1980.

Record No. 781620.

Present: Carrico, Harrison, Cochran, Harman, Poff and Compton, JJ.

*George D. Gold* [*Fla.*] (*John C. Keith; Blankingship & Keith; Moran & Gold* [*Fla.*], on brief), for appellant.

*Thomas D. Bagwell, Assistant Attorney General (Marshall Coleman, Attorney General, on brief), for appellee.*

HARRISON, J., delivered the opinion of the Court.

Scott Allan Fagan waived trial by jury and was convicted by the court below of possessing with intent to distribute marijuana, a controlled substance, in violation of Code § 18.2-248.

At 7:30 p.m. on September 21, 1977, Captain J. L. Higgins, Jr., of the Albemarle County Sheriff's Department, executed an affidavit to obtain a search warrant to search a mobile home in that county for marijuana. The premises to be searched were minutely described,[1] and the affidavit established the reliability of the informer.[2] Affiant Higgins also swore, as a basis for his belief that marijuana would be found on the premises to be searched, that:

An informer has advised affiant that informer has personal knowledge that as of the afternoon of Sept. 21, 1977, marijuana was in the said mobile home and would be there now.

The search warrant was executed by the officer at 11:30 p.m. on September 21, 1977, and approximately twenty-nine pounds of marijuana were discovered on the premises.

The defendant sought to suppress the marijuana in question, alleging that it was the product of an illegal search in that the affidavit in support thereof was insufficient. This appeal was perfected from an

[1] The affidavit by Higgins provided that: "He has reason to believe that on the premises known as [described in attachment] in the county of Albemarle there is now being concealed certain property, namely marijuana, a controlled substance." The attachment reads: "Red and white, two bedroom mobile home on Lot 15, Oak Lawn Trailer Court on U. S. Route 29 North on the west side adjoining the Virginia Land Company Office. When entering the trailer park, one goes on the left fork road to Lot 15. The mobile home is occupied by Mike Brown and Ron Wood. To reach the trailer after taking the left fork turn right at the intersection; subjects mobile home will be the fifth one on the left."

[2] "This informer's credibility or the reliability of the information may be adjudged by the following facts: Informer is a reputable member of the community. Affiant has known the informer for the last five to six years and during this time informer has been regularly employed. Informer has no prior record of arrests or convictions. Informer in the past has given affiant information that has been proven to be true concerning drug activity in this area. Informer has given this information to affiant on one occasion and to C. S. Craft on another occasion. Affiant has personal knowledge that informer gave such verified information to C. S. Craft. Informer's reputation among the members of the Sheriff's Department of Albemarle County, Va. is that he is truthful and trustworthy."

adverse ruling by the court below. The defendant does not question the reliability of the informer. The issue, therefore, is whether the positive and unequivocal statement that the informer had personal knowledge that marijuana was in a specific place at a specific time is sufficient to support a search warrant under the holdings of *Spinelli* v. *United States,* 393 U.S. 410 (1969), and *Aguilar* v. *Texas,* 378 U.S. 108 (1964).

■ The expression "personal knowledge" is widely used, and there is common acceptance that it means knowledge of a fact which a person has himself gained through his own senses and not from others or from information supplied by others. If a definition of the expression be necessary, the one given in *Black's Law Dictionary* 784 (5th ed. 1979) is acceptable. It is there defined as: "Knowledge of the truth in regard to a particular fact or allegation, which is original, and does not depend on information or hearsay."

■ We find the conclusion inescapable that the informer, who furnished Captain Higgins the information which was the basis of his affidavit, saw the marijuana in the mobile home and that he saw it on the evening the affidavit was given and the premises searched. Stated differently, the informer learned of the presence of the marijuana in a direct fashion, by personally seeing it. He was not acting upon "belief" based upon "statements or information" supplied by someone else or obtained in some other manner. The magistrate who issued the search warrant was justified in reaching this conclusion and in finding that probable cause existed for the issuance of a search warrant "based upon a common-sense reading of the entire affidavit." *Spinelli* v. *United States, supra,* 393 U.S. at 415.

No good purpose would be served by another detailed analysis of the numerous cases decided by the Supreme Court and by this court involving the sufficiency of an affidavit for a search warrant. In *Stallworth* v. *Comonwealth,* 213 Va. 313, 191 S.E.2d 738 (1972); *Guzewicz* v. *Commonwealth,* 212 Va. 730, 187 S.E.2d 144 (1972); *Hooper* v. *Commonwealth,* 212 Va. 49, 181 S.E.2d 816 (1971); and *Wiles* v. *Commonwealth,* 209 Va. 282, 163 S.E.2d 595 (1968), we found affidavits unacceptable for the reason that the statements made by the informers to the affiants were conclusory in nature. In none did a reliable informant claim that he had personal knowledge of the presence and location of the drugs or other contraband involved. As we held in *Berger* v. *Commonwealth,* 213 Va. 54, 55, 189 S.E.2d 360, 361 (1972), a "[m]ere affirmation in the affidavit of belief or suspicion" does not suffice.

In *Wheeler* v. *Commonwealth,* 217 Va. 95, 98, 225 S.E.2d 400, 403

(1976), we approved the affidavit involved, holding that it satisfied the requirement of the *Aguilar-Spinelli* tests in that the affidavit was "based upon the personal observations of a reliable informant." We took occasion to observe that the defendant's reliance upon *Wiles* and *Berger* was misplaced for the reason that "[i]n *Wiles*, the affidavit did not establish that the informant's information was based on personal observation" and that "[t]he *Berger* affidavit was found deficient because it stated conclusions rather than facts." *Id.*

In *Manley* v. *Commonwealth*, 211 Va. 146, 150, 176 S.E.2d 309, 313 (1970), *cert. denied*, 403 U.S. 936 (1971), we held the affidavit satisfied one of *Aguilar's* requirements in that "[t]he informant's information was based on personal observation and participation in the defendant's illegal activity."

In *Huff* v. *Commonwealth*, 213 Va. 710, 194 S.E.2d 690 (1973), we affirmed the conviction where the affidavit contained an informer's statement to the affiant that he personally overheard a conversation between the accused and others which concerned the plans of the accused to pick up illegal drugs that night.

In the case under review there was no long interval between the time the affiant gained knowledge from an informer of the presence and location of the marijuana and the time he obtained and executed a search warrant, a circumstance which figured prominently in *Pierceall* v. *Commonwealth*, 218 Va. 1016, 243 S.E.2d 222 (1978), *cert. denied*, 439 U.S. 1067 (1979); *Huff* v. *Commonwealth, supra;* and *Stovall* v. *Commonwealth*, 213 Va. 67, 189 S.E.2d 353 (1972). Within a few hours time, Captain Higgins obtained his information, made the affidavit, secured the search warrant, and conducted the search. The affidavit presents none of the infirmities found in so many affidavits disapproved by appellate courts. It satisfies in all respects both requirements of the *Aguilar-Spinelli* tests, *i.e.,* the credibility of the informer and the circumstances supporting the validity of the informer's conclusion.

Accordingly, the judgment of the lower court is

*Affirmed.*