# Richmond

## James David Huff v. Commonwealth of Virginia.

March 5, 1973.

Record No. 8065.

Present, All the Justices.

*William M. Mote*, for plaintiff in error.

*James E. Kulp, Assistant Attorney General (Andrew P. Miller, Attorney General*, on brief), for defendant in error.

POFF, J., delivered the opinion of the court.

On September 17, 1971 James David Huff was convicted by a jury of possessing Schedule III controlled drugs with intent to distribute and sentenced to five years in the penitentiary.

The trial court overruled Huff's motion to suppress the evidence seized in a search of his residence. We granted a writ of error to consider Huff's several assignments of error challenging the validity of the search warrant and the sufficiency of the affidavit on which it was issued.

Over a period of several months prior to June 2, 1971, the Winchester Police Department, the Frederick County Sheriff's Department and the Virginia State Police Department conducted an investigation of the illegal use and distribution of controlled drugs in the community. Lt. Allen Barley directed and coordinated the joint operation, assembled and collated the information and participated personally in the surveillance of Huff's residence.

From the information assembled, an affidavit was prepared. On June 2, 1971 in the presence of Lt. Barley and the Clerk of the Municipal Court for the City of Winchester who administered the oath, the Judge of the Municipal Court signed the jurat "Subscribed and sworn to before me this 2d day of June, 1971." Lt. Barley did not in fact sign the affidavit. A search warrant was issued the same day and returned "unexecuted" on June 9, 1971.

At the request of Officer Holiday and on the basis of the original affidavit, a second search warrant was issued on June 9, 1971, and following a successful search was returned "executed" on June 10, 1971.

On June 14, 1971 Lt. Barley signed the affidavit.

On June 23, 1971 at the preliminary hearing, the trial court permitted the Commonwealth to amend the executed search warrant by changing the preface of the first sentence which read "Whereas, F. Allen Barley has made oath before me this day", to read "Whereas, F. Allen Barley has made oath before me the 2nd day of June, 1971".

Huff challenges both the precedural regularity and the substantive sufficiency of the affidavit. As to procedural regularity, he contends that "(t)he verity of the affidavit itself is impeached when the certification states that the affidavit was subscribed and sworn to prior to the issuance of the search warrant when in fact it was not."

Lt. Barley's uncontradicted testimony was that in the presence of the Judge of the Municipal Court he was sworn by the clerk. So long as the affiant is sworn in the presence of the magistrate by one authorized to administer oaths, as the clerk is, there is no requirement that the magistrate administer the oath. *Ex parte Davis,* 62 S.W.2d 1086 (Mo. 1933). See also *State v. Scott,* 262 S.W.2d 614 (Mo. 1953); *People v. Semonite,* 18 Misc 2d 427, 189 N.Y.S.2d 256 (1959).

Lt. Barley did not sign the affidavit until after the search warrant was executed. But nothing in the Constitution of the United Staes or in Virginia's Constitution, statutes or rules of court requires an affiant to subscribe a search warrant affidavit. It is the *oath* that solemnizes and verifies. If the affiant is sufficiently identified in the body of the affidavit or in the jurat, his signature is not essential. *State* v. *Higgins,* 266 N.C. 589, 146 S.E.2d 681 (1966); 3 Am. Jur. 2d *Affidavits* § 15 (1962); 2A C. J. S. *Affidavits* § 36 (1972).

The magistrate's "certification" that the affidavit was subscribed by the affiant, when it was not, does not taint the verity of the affidavit. The jurat is not a part of the affidavit; it is simply written evidence that probable cause was supported by oath. 3 Am. Jur. 2d *Affidavits* § 16 (1962).

With respect to Huff's challenge of the substantive sufficiency of the affidavit we must examine paragraph (3) which states:

"That the material facts constituting probable cause for issuance of the warrant are:

"(a) An investigation has been conducted over a long period of time by the Winchester Police Department independently and in concert with the Virginia State Police and the Frederick County Sheriff's Office into the abuse and unlawful use and distribution of drugs controlled by the Controlled Drug Act of Virginia, some of which are better known as narcotics, including marijuana, hashish and heroin; hallucinogenic drugs including LSD, barbiturates; and other manufactured drugs acting as stimulants and/or depressants affecting the nervous system when their use is abused, all of which drugs will hereinafter be referred to as Controlled Drugs.

"(b) That this continuing investigation has, through the interchange of information between the aforementioned Police forces and from other sources, resulted in the names of certain individuals being repeatedly reported, some as unlawful users and some as unlawful distributors of the aforementioned Controlled Drugs in the Winchester Area.

"(c) That one of the persons whose name is repeatedly reported to the Winchester Police as an unlawful distributor of Controlled Drugs is James D. Huff who resides in a single dwelling unit designated 915 Franklin Street in Winchester, and that this person is more popularly known as "J. D." Huff and that the frequent recurrence of his name in the said continuing investigation is as "J. D." Huff.

"(d) That from as many as three different reliable sources, the Winchester Police Department has received information that the said James D. Huff is dealing in and with the unlawful distribution of Controlled Drugs; that these informants are not known to each other as informers and each has a different connection with the said James D. Huff; and that their individual reliability is established by reason of their position in connection with the said James D. Huff, affording each of them the opportunity to learn of his activities, and by reason that much of the information given by one is corroborated by the information given by one or both of the others.

"(e) That in recent weeks neighbors of the said James D. Huff have made many complaints to the Winchester Police Department of an unusual number of vehicles coming to and leaving the residence at 915 Franklin Street on certain evenings and at various hours, sometimes ranging beyond midnight, and that by reason of such quantity of vehicular traffic at this address, many persons would move between the vehicles and the residence.

"(f) That in addition to conducting and participating in part of the continuing investigation into the unlawful use and distribution of Controlled Drugs in the Winchester Area, the affiant has had the duty of compiling and correlating the information obtained in the investigation and he thereby has knowledge of and acccess to all of such information.

"(g) That the affiant has on certain nights observed the residence at 915 Franklin and has observed an unusual amount of traffic in the vicinity of this address at different times during the evenings of his observation and also the affiant has observed persons go into the dwelling, stay only a few minutes and then returning to their cars and driving off; and that the affiant saw, during his observation, some of these persons established by the investigation to be unlawful users of Controlled Drugs go into the residence at 915 Franklin Street.

"(h) That on a recent date one of the three heretofore mentioned reliable sources reported to the Winchester Police Department that he had overheard a conversation between the said James D. Huff and two other persons whose names have recurred frequently in the investigation reports as persons being involved in the unlawful distribution of Controlled Drugs in this Area; and the said reliable source reported that the conversation he overheard between the said three disclosed that James D. Huff was one making a trip

that night to pick up "the stuff", which phraseology among unlawful users and distributors of Controlled Drugs has the connotation of meaning marijuana, hashish and/or heroin, and to return it to Winchester that same night.

"(i) That the affiant, relying upon the conversation overheard and reported to the Police Department, as aforesaid, stationed himself to observe the residence of the said James D. Huff at 915 Franklin Street and again saw a number of cars come and stop at said residence and the occupants thereof go into the said residence and in most instances stay only a few minutes, then return to their cars and depart; and that the affiant again saw persons go into said residence who have been established by the said investigation to be unlawful users of Controlled Drugs and one who has been repeatedly reported as an unlawful distributor thereof."

Huff argues that the affidavit was substantively insufficient under the binary test defined in *Aguilar* v. *Texas,* 378 U.S. 108 (1964); cf. *Wiles* v. *Commonwealth,* 209 Va. 287, 163 S.E.2d 595 (1968).

The first mandate of that test requires that the affidavit state underlying circumstances justifying the conclusion that the physical evidence was probably located in the place sought to be searched. If the circumstances stated in paragraph (3) of this affidavit are not so remote as to render the affidavit stale (a question which we consider later), we hold that they justify the conclusion and satisfy the first mandate of the *Aguilar* test.

The second mandate requires that the affidavit state underlying circumstances justifying the conclusion that the informant was "credible" or his information "reliable". We find that the affidavit here satisfies the second mandate of the *Aguliar* test. In *Manley* v. *Commonwealth,* 211 Va. 146, 176 S.E.2d 309 (1970), we discussed three methods by which the credibility of the informant can be established, viz., (1) by showing that the informant had previously furnished information that led to convictions; (2) by showing that the informant was an eyewitness with personal knowledge of the location of the evidence; or (3) by showing that the information imparted was an admission against the informant's penal interest.

The *Manley* list is not an exclusive or preclusive list. The informant's credibility can be established in other ways. When several informants are involved, when they are unknown to each other as informants, and when the information furnished by one corroborates the information furnished by another, the enhanced reliability of the

information lends credibility to the informants. Here, the informants' collective information was further corroborated and the informants' credibility further reinforced by information gathered from personal police surveillance. *See Draper* v. *United States*, 358 U.S. 307 (1959).

Huff argues further that assuming the June 2 affidavit was sufficient, procedurally and substantively, to support the June 2 warrant, a second warrant could not issue on the same affidavit after the first warrant had been returned unexecuted; that both the June 2 warrant and its affidavit became void because the warrant was not executed "forthwith" as required by Code § 19.1-86; and that the June 9 warrant was void because not supported by a new affidavit stating fresh facts which would justify the magistrate in finding probable cause to believe that the narcotics were in Huff's residence on June 9.

We will consider first whether multiple warrants may issue on a single affidavit.

The Fourth Article of Amendment to the Constitution of the United States provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation". The substantial equivalent is mandated in Section 10 of the Constitution of Virginia (1902) read in context with Code §§ 19.1-85, -86. *Wiles* v. *Commonwealth*, 209 Va. 282, 163 S.E.2d 595 (1968); *Kirby* v. *Commonwealth*, 209 Va. 806, 167 S.E.2d 411 (1969). So long as the affidavit remains sufficient to support a finding of probable cause, nothing forbids the issuance of more than one warrant. *See United States* v. *Bigos*, 459 F.2d 639 (1st Cir. 1972). See also the concurring opinion of Mr. Justice McReynolds in *Sgro* v. *United States*, 287 U.S. 206, 215 (1932), where he said that if the affidavits were not stale, "the new warrant, of course, was good—just as good as if no earlier one had been issued upon the same affidavit."

We will consider now whether the June 2 affidavit was stale.

Huff complains that the affidavit does not fix events and circumstances by specific date.

Virginia's statutes fix no maximum time interval between the date of the events and circumstances recited in the affidavit and the date of the affidavit and issuance of the warrant. However, as Mr. Chief Justice Hughes, speaking for the majority of the court in *Sgro, supra,* said:

"While the statute does not fix the time within which proof of probable cause must be taken by the judge or commissioner, it is manifest that the proof must be of facts so closely related to the

time of the issue of the warrant as to justify a finding of probable cause at that time." 287 U.S. at 210.

And in *Stovall* v. *Commonwealth*, 213 Va. 67, 189 S.E.2d 353 (1972), we held that a finding of probable cause to search must be based upon facts reasonably related in time to the date of the issuance of the warrant, and since the only competent facts recited in the affidavit in that case were more than 72 days old, we held that, absent additional facts which would justify the magistrate in finding probable cause to believe that the criminal conduct continued until the date of the warrant, the affidavit was insufficient.

We must now determine whether the additional facts absent in *Stovall* are present in the case at bar.

We hold that they are.

The facts stated in paragraph (3) of the affidavit were assembled by three police agencies operating in three jurisdictions. They were gathered from several sources including three informants, complaining neighbors and the affiant himself, a personal observer. The investigation was conducted "over a long period of time" and was a "continuing investigation". The events and circumstances described were not isolated or occasional but frequent, recurrent, and persistent. Visitors to the Huff residence were not commensals but recognized users and distributors of narcotics, and remaining only five minutes, they were probably not there for social communion. And "the stuff" Huff was to pick up on his trip was probably not groceries.

With respect to these events and circumstances, the time reference was "in recent weeks" and "on a recent date". Such terms are variable and relative, but the magistrate could reasonably conclude from the factual context that "in recent weeks" was less than a month and "on a recent date" even less. As the court said in *Durham* v. *United States*, 403 F.2d 190, 194, note 6 (9th Cir. 1968):

"The length of the time lapse alone is not controlling since even a brief delay may preclude an inference of probable cause in some circumstances while in others a relatively long delay may not do so."

See also *Reynolds* v. *State*, 238 So.2d 557, 558 (Ala.Crim. App. 1970) where the court held:

"A statement in an affidavit for a search warrant that an informant had 'recently' seen or purchased narcotic drugs, when connected with other language that would lead to the conclusion that the unlawful condition continued to exist on those premises at the time of the application for the warrant, has been held sufficient to show the time when the alleged violation took place."

In *United States* v. *Harris*, 403 U.S. 573, 577 (1971), Mr. Chief Justice Burger cited with approval the admonition of *United States* v. *Ventresca*, 380 U.S. 102, 108 (1965):

"[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. . . . [A]ffidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."

Putting ourselves in the shoes of the issuing magistrate and reading the June 2 affidavit for its commonsense import, we find that Huff had been identified repeatedly by reliable informants as a distributor of controlled drugs; that he had repeatedly distributed drugs to known drug users from his residence; that his unlawful conduct was so frequent, recurrent and persistent as to form a pattern of criminal practice which provoked repeated complaints of neighbors; that this pattern had continued over a long period of time; and that it was still in process on a recent date. The commonsense conclusion to be drawn from such facts is that the pattern of criminal practice probably was yet continuing on the date of the affidavit; that it would probably continue until the warrant was executed; and that drugs would probably be found at that time in Huff's residence.

It is not necessary that the facts support this conclusion beyond a reasonable doubt but only that they support the probability of the conclusion. *See United States* v. *Harris, supra*, 403 U.S. at 584.

The judgment is affirmed.

*Affirmed.*