## Richmond

# WILLIAM LOUIS PIERCEALL v. COMMONWEALTH OF VIRGINIA

April 21, 1978.

Record No. 770705.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Compton, JJ.

*Jack S. Rhoades (T. Brooke Howard; Howard, Stevens, Lynch, Cake & Howard*, P.C., on brief) for plaintiff in error.

*Robert Harkness Herring, Jr., Assistant Attorney General (Anthony F. Troy, Attorney General*, on brief) for defendant in error.

COCHRAN, J., delivered the opinion of the Court.

Defendant, William Louis Pierceall, was convicted by the trial court, sitting without a jury, of manufacturing or producing marijuana, possession of amphetamine with intent to distribute, possession of marijuana with intent to distribute, and possession of cocaine. For each of the four convictions, defendant was sentenced to fifteen years in the penitentiary with ten years suspended, conditioned upon his good behavior. The sentences were ordered to run concurrently.

Defendant was arrested on the night of April 19, 1976, by police conducting a search of his home in Woodbridge. During the search, police seized certain controlled substances and alleged drug paraphernalia. The search warrant had been issued

earlier that day by a magistrate based upon an affidavit sworn to by Officer Bennett of the Prince William County Police Department.

Before the trial, defendant moved to suppress all the fruits of the search. Denying the motion, and admitting the evidence, the trial court commented that

> "the factual allegations and the affidavit covering early April, 1976 relating to the White Crosses, plus the information that the Defendant is selling White Crosses, plus the information received in the past 24 hours constitutes sufficient factual allegations which, when added to the earlier information, are sufficient to establish probable cause."

The affidavit, upon which the search warrant was issued, is set out in the margin.*

---

*"During the fall of 1972, I received unconfirmed information from various informants regarding one WILLIAM PIERCEALL who was and is the owner/operator of the Dale City Sunoco (service station) at 3125 Davis Ford Road, Woodbridge, Virginia. The information given me was that PIERCEALL was trafficking in marijuana and other drugs. That is to say that PIERCEALL buys illicit controlled substances, marijuana and other drugs, for a price and then re-sells the material at a substantial profit. This information could not be confirmed at that time.

"On July 23, 1973, Investigator C. T. Deane, also of the Prince William County police department, told me that on July 19, 1973, he had arrested two persons, MICHAEL STEVEN JENKINS and ROGER ALLEN HURT, charging them with a burglary of the Dale City Sunoco Service Station (owned by subject PIERCEALL) on July 12, 1973. Investigator Deane told me that both had confessed to this crime after having been advised of their rights, and that MICHAEL STEVEN JENKINS told him that during the time that he (JENKINS) had worked for PIERCEALL, he (JENKINS) had seen a case placed in the office area of the station by PIERCEALL which contained two (2) wrapped kilos (1 Kilo = 2.2 lbs.) of marijuana. JENKINS told Investigator Deane that PIERCEALL had left the bag at the station that night and had telephoned him (JENKINS) to see if it was still there. JENKINS indicated that he was a user of marijuana and therefore could recognize same.

"Investigator Deane told me that subject ROGER ALLEN HURT had been interviewed separately from subject JENKINS and that HURT stated that he also had seen the two kilos of marijuana which had allegedly belonged to PIERCEALL. At that time HURT was also an employee of WILLIAM PIERCEALL at the Dale City Sunoco Service Station.

"Investigator Deane also told me that JENKINS had told him that one WILLIAM 'BILLY' WOOTEN at the Dale City Sunoco service station was 'selling marijuana for PIERCEALL'. WILLIAM 'BILLY' WOOTEN is personally known to this investigator. He has the general reputation of a drug user and dealer in various drugs and marijuana.

"On July 25, 1973, Officer W. P. Metheny of the Prince William County Police Department who at that time was working undercover, purchased a quantity of cocaine from KIPPY EUGENE ROGERS, an employee of WILLIAM LOUIS PIERCEALL at the Dale City Sunoco Service Station. On July 31, 1973, Officer Metheny purchased a quantity of methampethamine [sic] from subject ROGERS. Both these sales took place in a house approximately 75 yards from the Dale City Sunoco Service Station, which was rented by ROGERS and others. ROGERS was subsequently arrested, tried and convicted on these two felonies. Another resident of the house occupied by KIPPY EUGENE ROGERS during this period of time was ROGER ALLEN HURT. Both ROGERS and HURT were employed by PIERCEALL at the Dale City Sunoco Service Station.

"I have learned that on August 29, 1973, WILLIAM LOUIS PIERCEALL was arrested in Toronto, Ontario, Canada in the company of KIPPY EUGENE ROGERS and two other men all of whom were charged with possession of restricted weapons (three (3) loaded handguns), possession of narcotics (cocaine) and conspiracy. Investigators of the Metropolitan Toronto Police questioned these men and learned that PIERCEALL was involved in an unknown business transaction with a man named ARTHUR ISREAL and that ISREAL had absconded with $3,000.00. PIERCEALL had gone to Toronto on August 26, 1973 and located ISREAL in that city. PIERCEALL then returned to Virginia where he hired KIPPY EUGENE ROGERS and two (2) other men to return to Toronto, find ISREAL and 'work him over' until he returned the $3,000.00. ROGERS and the other men were to be paid $200.00 each for their services. The Metropolitan Toronto Police Department believed that the four men actually planned to murder subject ISREAL and further believed that the $3,000.00 ISREAL absconded with was a drug 'rip-off'.

"It may be noted that WILLIAM LOUIS PIERCEALL, aka: 'BILL' PIERCEALL has been seen often in the company of known and suspected drug users and dealers in this community. A goodly portion of his associates are active in the illicit drug scene, and several have lived at PIERCEALL'S house at 13401 Kingsman Road, Woodbridge, Virginia, Prince William County for various lengths of time.

"In November 1975, I developed an informant who gave me additional information concerning WILLIAM LOUIS PIERCEALL. This informant desires to remain anonymous as he fears for his safety should his identity be made known. The informant stated that PIERCEALL 'had a gun and would use it' on him (the informant).

"The informant agreed to make a 'controlled buy' of marijuana from 'BILL' PIERCEALL at PIERCEALL'S house located at 13401 Kingsman Road, Woodbridge, Virginia on or about November 15, 1975.

"I met the informant at a pre-designated location at approximately 5:15 p.m. At this time I searched the informant and his/her car and thus assured myself that there was no marijuana or other controlled substances present. In addition, I removed the informant's personal money. I then furnished the informant $35.00.

"At 5:30 p.m. the informant departed enroute to 13401 Kingsman Road (BILL PIERCEALL'S house), and I followed in my car, observing the informant.

"I observed the informant arrive and enter 13401 Kingsman Road at 5:44 p.m.

"At 6:01 p.m. the informant was seen to exit 13401 Kingsman Road.

"I then followed the informant back to a pre-designated meeting place where the informant turned over a plastic bag of marijuana to me which the informant stated had been purchased from 'BILL' PIERCEALL for $35.00. Subsequent chemical analysis of the material purchased on this date conducted by a chemist

at the Bureau of Forensic Science (State laboratory) revealed the material to be in fact, marijuana.

"The informant also stated that approximately one (1) pound of marijuana was then within PIERCEALL'S house, along with 'at least 50 marijuana plants' which were being grown by BILL PIERCEALL in one bedroom in the lower portion of the house (13401 Kingsman Road, Woodridge, Virginia).

"In early April 1976, I received additional information from the informant regarding WILLIAM LOUIS 'BILL' PIERCEALL to the effect that PIERCEALL had recently been 'getting some white crosses in'. NOTE: White Cross is a jargon term on [sic] the drug culture which refers to a type of small white pill of amphetamine and/or methamphetamine which has a scored mark in the shape of a cross on [sic] X on one side. They are also called 'cartwheels' and 'speed'. 'Speed' refers to any preparation of a stimulent [sic] nature.

"I base my knowledge of current drug terms, prices, appearance, etc., on the following facts:

"I am now and have been a full time narcotics enforcement officer with four (4) years experience exclusively in narcotics enforcement and a total of 13 years in law enforcement. I have received specialized training in narcotics enforcement through the U. S. Department of Justice, Bureau of Narcotics and Dangerous Drugs. I am a member in good standing of the International Association of Narcotics Enforcement Officer's and have read various books, etc., on the subject as well as having completed a number of college level classes related to special enforcement.

"I also maintain an informant system which allows me continuing contact with the street terms, prices, etc., of various drugs and controlled substances.

"I have received information regarding WILLIAM LOUIS PIERCEALL which leads me to believe that he is presently selling quantities of 'white crosses'.

"Within the past 24 hour period, I have received information from the informant as follows: The informant told me that William 'Bill' Pierceall presently has a large number of 'white crosses' at his home at 13401 Kingsman Rd. Woodbridge, Va. as well as a quantity of marijuana, marijuana smoking pipes and other related paraphernalia of drug use. I believe the information received from this person to be reliable, as the informant has provided me with information on several occasions in the past which independent investigation has proven to be true and correct. For example, the informant on one occasion told me that a certain person was dealing in a particular type of drug at a given point in time. I had, through prior investigation, determined that this information was correct, unbeknownst to the informant. The informant has provided this type of information on several occasions. In addition, I am forther [sic] inclined to believe the informant due to the 'controlled buy' situation in November 1975.

"On the evening of April 19, 1976 I observed William 'Bill' Pierceall in the company of one Joseph Rowe at the Hardee's restaurant in the Glendale Shopping Center Woodbridge, Va. Joseph Rowe is a known drug user and is a convicted felon having been convicted in 1973 of 2 counts of sale of marijuana to Inv. D. L. Cahill of the Prince William County Police. He is presently known to be active in the drug scene.

"I therefore believe that based on the information provided by the informant and the fact that I personally seen William 'Bill' Pierceall in the company of a known Drug dealer within the past 24 hours, that there is now concealed within the premises of 13401 Kingsman Rd., Woodbridge, Va. Prince William County, a quantity of contraband controlled substances possessed in violation of existing law."

Defendant contends that the affidavit does not contain sufficient underlying facts to establish probable cause under the test required by *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969).

■ Before a magistrate is justified in issuing a search warrant, he must be satisfied that probable cause to search exists at the time the warrant issues. *Sgro* v. *United States*, 287 U.S. 206, 210-11 (1932); *Stovall* v. *Commonwealth*, 213 Va. 67, 189 S.E.2d 353 (1972). Thus, circumstances occurring substantially before the issuance of a search warrant can justify the issuance of the warrant only if such past circumstances disclose "a probable cause" of continuous nature so as to support a rational conclusion that the past probable cause is still operative at the time of the issuance of the warrant. *Sgro* v. *United States, supra.*

In *Stovall*, we held that while time alone is not controlling, evidence that a person possessed an illegal drug 72 days prior to the issuance of a search warrant was insufficient by itself to establish probable cause. However, an affidavit containing this type of stale information can be used to establish probable cause if it also contains additional facts showing that the evidence of criminal conduct could still be found at the place to be searched. 213 Va. at 70-71, 189 S.E.2d at 356.

The affidavit in the instant case contains information about defendant's alleged criminal conduct during 1972, 1973, and on or about November 15, 1975.[1] The interval between these events and April 19, 1976, when the warrant was issued, is considerably longer than the interval in *Stovall*. This information, standing alone, is not sufficient to support a finding of probable cause on the date the warrant was issued.

We must, therefore, consider whether the remaining portion of the affidavit states additional facts from which the magistrate could rationally conclude that defendant's alleged criminal activity continued until April 19, 1976, when the warrant issued.

The only matters in the affidavit dealing with events subsequent to the November 1975 "controlled buy" can be summarized as follows:

---

[1] We believe that the allegations concerning the November 1975 occurrence would have supported a finding of probable cause had the search warrant issued then.

(1) In early April 1976, the affiant received information from the anonymous informant that Pierceall had recently been "getting some white crosses [a controlled drug] in;"

(2) Information received by the affiant leads him to believe that Pierceall is presently selling quantities of "white crosses;"

(3) Within the past 24 hour period, the informant told the affiant that Pierceall "presently has a large number of 'white crosses' at his home ... as well as a quantity of marijuana, marijuana smoking pipes and other related paraphernalia of drug use;"

(4) The informant had furnished the affiant information of illegal drug activity in the past which the affiant found to be correct as a result of an independent investigation, and that affiant believed the informant, "due to the 'controlled buy' situation in November 1975, was credible and his information reliable;" and

(5) Affiant's statement that defendant has been seen often in the company of known and suspected drug users and dealers; and that on the night of April 19, 1976, defendant was seen at a restaurant in the company of a convicted drug dealer.

█ An affidavit for a search warrant based upon information from an informant must describe (1) some of the underlying circumstances necessary to enable a neutral and detached magistrate to judge the validity of the informant's conclusion that the evidence sought was where he claimed it was; and (2) the underlying circumstances from which the magistrate can determine that the affiant's unnamed informant was credible or his information reliable. *Spinelli* v. *United States, supra; Aguilar* v. *Texas, supra; Guzewicz* v. *Commonwealth,* 212 Va. 730, 732, 187 S.E.2d 144, 146 (1972).

The dispositive question is whether the affidavit met the first requirement of the two-pronged *Aguilar-Spinelli* test,[2] *i.e.,* whether it described some of the underlying circumstances necessary to enable the magistrate to judge the validity of the informant's conclusion that the narcotics were in Pierceall's home.

█ A determination whether probable cause exists for the issuance of a search warrant should be "based upon a

---

[2]Defendant does not contend that the second prong of the *Aguilar-Spinelli* test was not met.

common-sense reading of the entire affidavit." *Spinelli* v. *United States, supra,* 393 U.S. at 415; *United States* v. *Ventresca,* 380 U.S. 102, 108 (1965). *See Huff* v. *Commonwealth,* 213 Va. 710, 717, 194 S.E.2d 690, 696 (1973). In *Spinelli,* the Supreme Court indicated that a tip, which by itself does not establish probable cause, may properly be considered by a magistrate, and other portions of the affidavit may support the tip so as to "permit the suspicions engendered by the informant's report to ripen into a judgment that a crime was probably being committed." 393 U.S. at 418. Upon a fair reading of the entire affidavit in the present case, we hold that probable cause was established.

The informant made the controlled buy of marijuana on November 15, 1975, in Pierceall's residence. He reported to the affiant-officer immediately after the transaction that there was approximately a pound of marijuana in the house and that "at least 50 marijuana plants" were being grown by Pierceall in a bedroom in the lower portion of the dwelling. It is apparent, from the informant's prompt admittance to the residence, his speedy consummation of the purchase, and his report to the affiant, that he enjoyed the confidence of Pierceall, was a marijuana customer of his, and was familiar with at least a part of the interior of the residence. Moreover, the supervised growth of many marijuana plants by Pierceall indicated a continuing enterprise in the production and distribution of marijuana rather than occasional or isolated incidents.

The affiant stated that on April 19, 1976, the date on which the search warrant was issued, he observed Pierceall in the company of Joseph Rowe, a known drug user who had been convicted in 1973 of two counts of selling marijuana and who "is presently known to be active in the drug scene." Defendant maintains that the reference to Rowe's present activities is a conclusory statement which, under *Guzewicz* v. *Commonwealth,* 212 Va. 730, 187 S.E.2d 144 (1972), must be disregarded. In *Guzewicz,* the affidavit included a statement that the affiant, a police officer, had personal knowledge that the premises to be searched were "frequented by persons known to him to be unlawful users of controlled drugs." Relying on *Spinelli, supra,* 393 U.S. at 418-19, we accorded no probative value to the conclusory statement. We acknowledged doubt, however, in light of the diverse views expressed in *United States* v. *Harris,* 403 U.S. 573 (1971), as to the continuing validity of this aspect of

*Spinelli.* Although *Spinelli* has not been further clarified in this regard, we believe that probative value may be accorded the officer's statement that he had observed Pierceall, on the very day that application for the warrant was made, in the company of a man known to the affiant as a drug dealer, where the statement was supported by the fact that Rowe had previously been convicted of two counts of selling marijuana. Additional information in the affidavit also established a pattern of association by Pierceall with other convicted drug traffickers over a period of years.

█ As in *Huff, supra,* the investigation of the accused in the present case had extended over a long period of time. Pierceall had been identified with the drug traffic and with known and suspected drug users and distributors since 1972. Some of the inculpatory information comprised no more than unconfirmed rumors, but some was detailed information received from police officers and from employees of Pierceall.

In *Huff,* we held that the "commonsense conclusion" to be drawn from facts establishing a pattern of criminal practice by the accused was that the pattern probably was continuing at the time of the affidavit, that it would probably continue until the warrant was executed, and that drugs would probably be found at that time at Huff's residence. 213 Va. at 717, 194 S.E.2d at 696. Here, there was an affirmative, unequivocal representation by a reliable informant within 24 hours of the execution of the affidavit that the pattern of criminal conduct was continuing.

The present affidavit is distinguishable from the one found insufficient in *Stovall.* There, the affidavit contained information as to possession of controlled drugs during the period August 21 to September 9. The affidavit further stated that the affiant, a police officer, had received information from another named police officer on November 20, the date the search warrant was issued, that the suspect "has a large quantity of marijuana" in his residence. We held that the information as to possession of drugs in August and September was too stale, and that the current information consisted of a mere conclusory statement without supporting facts.

In the present case, however, the tip in early April and the last tip received shortly before issuance of the warrant on April 19, 1976, were furnished by the same person who five months

previously had entered defendant's residence, made the controlled buy, and observed a pound of marijuana and the growing marijuana plants. We believe it is reasonable to infer that the informant's last tip, unlike the officer's unsupported conclusory statement in *Stovall,* was based upon personal observation. We conclude that the affidavit, taken as a whole, states sufficient underlying circumstances to support the magistrate's finding of probable cause. *See Manley* v. *Commonwealth,* 211 Va. 146, 176 S.E.2d 309 (1970), *cert. denied,* 403 U.S. 936 (1971), where we upheld an affidavit based upon the personal observation of the informant, who also stated, against his penal interest, that he had been participating with the suspect in the illegal use of drugs.

For the reasons stated, the judgment of the trial court will be

*Affirmed.*