COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, Beales and Senior Judge Clements
Argued by teleconference


COMMONWEALTH OF VIRGINIA

v.      Record No. 0706-11-2

DAVID WILLIAM BICKFORD

COMMONWEALTH OF VIRGINIA

v.      Record No. 0707-11-2

TRACY RUTH BICKFORD, S/K/A
  TRACEY BICKFORD

COMMONWEALTH OF VIRGINIA

v.      Record No. 0708-11-2

LARRY EDWARD TURNER, JR.

MEMORANDUM OPINION[*] BY
JUDGE ROBERT J. HUMPHREYS
AUGUST 29, 2011


FROM THE CIRCUIT COURT OF LOUISA COUNTY
Timothy K. Sanner, Judge

Rosemary V. Bourne, Assistant Attorney General II (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellant.

Scott Goodman for appellee David William Bickford.[1]

(Allison Rafferty, on brief), for appellee Tracy Ruth Bickford.

(Steven Shareff, on brief), for appellee Larry Edward Turner, Jr.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellees' motion for leave to file a combined brief of appellees and for leave to have a single counsel present oral argument on behalf of all appellees is granted.

In this case, the Commonwealth of Virginia ("the Commonwealth") appeals the Louisa County Circuit Court's ("trial court") suppression of the evidence obtained against David William Bickford, Tracy Ruth Bickford, and Larry Edward Turner, Jr., ("appellees") as a result of a search warrant issued upon an infirm affidavit. Specifically, the Commonwealth contends the trial court erred in finding (1) that the affiant, Lieutenant Howard Porter of the Louisa County Sheriff's Office ("Porter"), acted recklessly in relying on the Louisa County Assessor's website to determine the square footage of the target house, (2) that Porter did not sufficiently corroborate the unnamed informants' information, (3) that probable cause to believe that a continuous marijuana grow operation existed at the target house had gone stale, and (4) that the good faith exception to the exclusionary rule enunciated in United States v. Leon, 468 U.S. 897 (1984), did not apply. For the following reasons, we hold that there is insufficient evidence in the record before us to support the trial court's factual finding that Porter acted recklessly in obtaining the search warrant, and we, thus, reverse the trial court's suppression of the evidence. Our disposition of this assignment of error renders moot the Commonwealth's remaining assignments of error, since the information provided by Porter in the affidavit for the search warrant clearly both corroborates the information provided by the unnamed informants and, taken together with the information supplied by those informants, supplies probable cause for the issuance of the search warrant.

I. Background

On July 7, 2010, Porter obtained a search warrant for the home of appellees, located at 3040 Goldmine Road in Louisa County. Porter requested the search warrant "in relation to" the manufacture of marijuana at that address. The affidavit for the search warrant contained the following statement of probable cause:

> On June 21, 2010, Lieutenant Howard Porter of the Louisa
> Narcotics Task Force received a telephone call from a citizen who

wished to remain unnamed, who stated that approx[imately] 2 months ago, that they were at the residence of Larry Turner, located at 3040 Goldmine Road, located in Louisa County Virginia and observed approx[imately] 30 marijuana plants growing in the garage. They advised that Larry Turner starts the marijuana plants as seedlings in the basement of the house. As the plants grow bigger they are moved to the garage which has been converted with pots and grow lights, for indoor marijuana grow. This unnamed person said they have known Larry Turner for several years and [he] has kept an (sic) constant marijuana grow operation in the residence and garage. They also advised that he drives an early 1990's white Chevy Cavalier, and does not work. Later on June 21, 2010, Lt. Porter received a 2nd unnamed person who gave the same information as the first except that he/she saw as many as 100 marijuana plants growing in the garage. Both gave the same description of the residence and Lt. Porter verified the description by driving by the residence.

Lt. Porter conducted a DMV check on Larry Turner and found that Larry Edward Turner, Jr. (DOB 1-15-72) shows his address as 3040 Goldmine Road, Louisa Va. 23903. DMV also shows that Larry Edward Turner Jr. has a 1994 white Chevy 4-door sedan registered to him and listing the same address, 3040 Goldmine Road.

A check with the Virginia Employment Commission shows that Larry Edward Turner, Jr. has no employment history in Virginia. On April 10, 2002, Larry Edward Turner was arrested in Forestville Maryland, for assault and admitted to smoking marijuana with PCP. On August 18, 1998, he was arrested for possession of marijuana in Annapolis, Maryland and on March 26, 1993, he was arrested for possession of a controlled dangerous substance in Anne Arundel County, Maryland.

D.E.A. task force Special Agent Chris Bennett subpoenaed electricity billing records from Rappahannock Electric Cooperative for 3040 Goldmine Road and two other residences in the same area, 3767 Goldmine Road and 5100 Bibb Store Road. Larry Turner's residence at 3040 Goldmine Road, a 2,106 square foot house, used a total of 37,540 kilowatt hours from September, 15, 2009 to June 15, 2010 for an average of 4,570 kilowatt per month. During the same time frame, 3767 Goldmine Road, a 2240 square foot house, used 19,858 kilowatt hours for an average of 2206 per month. Also, during the same time frame, 5100 Bibb Store Road, a 2,012 square foot house used 9,748 kilowatt hours per month for an average of 1083 per month. S/A Bennett advised that the high rate of kilowatt hours used at 3040 Goldmine Road is typical of an indoor marijuana grow operation.

- 3 -

> On July 7, 2010, Lt. Porter discussed this case with D.E.A. Special
> Agent Mark Bertsch who has worked several indoor marijuana
> grow operations and he advised that the high rate of kilowatt usage
> is usually associated with an indoor marijuana grow operation.
> Special Agent Bertsch advised that a typical residence does not use
> more than 1 kilowatt per square foot per month.

The affidavit also included a detailed description of the extensive experience and training

Lieutenant Porter, Special Agent Christopher Bennett, and Special Agent Mark Bertsch had in

the investigation of cases involving the distribution and possession of controlled substances.

Finally, the affidavit provided that Porter had "personal knowledge of the facts set forth in this

affidavit OR" that he "was advised of the facts set forth in this affidavit in whole or in part, by an

informer." The affidavit states:

> This informer's credibility or the reliability of the information may
> be determined from the following facts: 1st unnamed person, has
> lived in Virginia for over 10 years, maintains a fulltime job, has no
> criminal record and is a registered voter. 2nd unnamed person, has
> lived in Virginia for over 10 years, maintains a fulltime job, has no
> criminal record and is a registered voter.

A magistrate issued the warrant. Upon its execution, the authorities retrieved 40 items associated

with the distribution and possession of controlled substances along with "129 marijuana plants."

A grand jury indicted appellees for possession with intent to distribute more than one-half

ounce, but less than five pounds of marijuana, in violation of Code § 18.2-248.1. Prior to trial,

appellees each filed a motion to suppress. The trial court held a joint hearing on the motions to

suppress on March 7, 2011. At the hearing, appellees argued that the information provided by

the unnamed informants in support of the warrant had grown stale; that the information provided

by the unnamed informants provided insufficient probable cause for a warrant to issue; that

Porter provided recklessly false information in stating that the residence involved was only 2,106

square feet; and that the credibility of the unnamed informants had not been established.

In support of their position, appellees presented testimony from Terry McCumber, a general contractor and friend of one of the appellees, David Bickford. McCumber measured the home on July 19, 2010, and determined that the living space was 3,611 square feet, the screened-in porch was 390 square feet, and the workshop was 459 square feet, for a total of 4,460 square feet. McCumber testified that the entire square footage was "all hooked up with electricity" and stated that the entire house has baseboard heat. When asked whether baseboard heat uses more electricity than other types of heat, McCumber responded, "tears it up." On cross-examination, McCumber acknowledged that he did not look at the county tax assessment records because "apparently they assess it differently from me." McCumber also explained that the porch actually had walls on only three sides and screens on the fourth. He, nevertheless, considered the porch as "livable square footage." McCumber also included the basement in his calculations. The defendants submitted four photographs into evidence: two of the photographs show the target property, one photograph depicts the house at 3767 Goldmine Road, and one photograph depicts the property at 5100 Bibb Store Road.

Appellee Larry Turner, who lived in the home during the period in question, testified that the porch and workshop actually had electrical outlets rather than baseboard heat, and he explained that, whereas the porch and basement were used for living space, the workshop "wasn't used as living space, it was used as work space." He also testified that the basement was located under the main part of the house and stated that someone looking at the front of the house could not see if there was a basement.

The Commonwealth called Porter to testify. Porter explained that he determined the square footage on the property "off the internet in the [Louisa County] assessor's office." He then drove by the house and observed it from "a couple hundred yards" away. Porter conceded he was not able to determine the square footage on the house merely by looking at it and stated,

"I can't determine square footage unless I walk up to the building . . . with a tape measure." Porter also explained that, in preparing the search warrant, he made a mathematical error in his calculation of the kilowatt usage in the residence. Porter testified the actual kilowatt usage in the residence during the relevant time period was 4,171 kilowatt hours per month, rather than 4,570. Porter conceded on cross-examination that he did not inquire as to the type of heat used or determine the number of persons residing in the three residences referred to in the search warrant. Porter also could not recall if he had driven by the other two residences referred to in the search warrant, only stating that he knew he "drove up and down the road a couple of times."

Porter also conceded on cross-examination that he verified the information given by the informants regarding their residency, voting, and absence of a criminal record *after* he obtained the search warrant. He also admitted on cross-examination that he had "made a mistake." The affidavit for the search warrant should have read "no *felony* criminal record on unnamed person #2." Unnamed person #2 had a misdemeanor criminal conviction on his/her record. Porter stated he made the mistake because he "had no reason to doubt what they were telling [him]." Porter, thus, did not verify their employment or voter registration status before obtaining the warrant. Porter testified on re-direct that he obtained a cell phone number from each informant and was able to contact them at their respective phone numbers.

The trial court questioned whether the affidavit contained sufficient evidence supporting the informants' veracity or their basis of knowledge for the tip. The trial court stated, "that's why it was very important to establish it was an on-going grow operation with some evidence to support those blanket conclusory statements that you would have some . . . electricity use unusual for the size of the house." The trial court found that Porter's statement that the average kilowatt hours were 4,570 instead of 4,171 was misleading but not intentional. However, the trial court also found that Porter's reliance on the tax assessment records in stating that the house

was 2,106 square feet was reckless because a photograph of the house depicted a residence that "would appear to be substantially larger than 2,106 feet." The trial court stated, "that looks nothing like a 2,100 square foot house, that looks like close to what it is, [a] 4,000 square foot house." The trial court stated it was troubled by what it considered to be a "great deal of recklessness" in drafting the affidavit. The trial court found "the arguments of the defendants are well made" and granted the motions to suppress.

The Commonwealth appeals those decisions pursuant to Code § 19.2-398.

## II. Analysis

The Commonwealth contends on appeal that the trial court erred in granting appellees' motions to suppress. In pertinent part, the Commonwealth assigns error to the trial court's finding that Porter's statements in the affidavit were made in reckless disregard for the truth so as to mislead the magistrate, as prohibited by the standard set forth in Franks v. Delaware, 438 U.S. 154 (1978).[2] We agree that the trial court erred.

### Standard of Review

"In an appeal by the Commonwealth" of a trial court's suppression order, we view the evidence in the light most favorable to the defendant, the prevailing party below. Commonwealth v. Peterson, 15 Va. App. 486, 487, 424 S.E.2d 722, 723 (1992) (citing Code § 8.01-680)). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v.

---

[2] The Commonwealth correctly notes that the trial court did not follow the proper procedure and require a substantial preliminary showing of police misconduct under Franks before finding that Porter acted with reckless disregard for the truth in obtaining the search warrant. However, because the Commonwealth did not object to the improper procedure at the suppression hearing, the Commonwealth concedes that it may not pursue that particular assertion of error on appeal. See Rule 5A:18.

Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).  However, we apply a *de novo* standard of review to the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case.  See Ornelas, 517 U.S. at 699.

<u>Legal Principles Governing the Issuance of a Search Warrant</u>

It is well settled that "a presumption of validity attaches . . .  to a warrant issued by a neutral and detached magistrate or judicial officer."  Lebedun v. Commonwealth, 27 Va. App. 697, 711, 501 S.E.2d 427, 434 (1998) (citations omitted); see also Franks, 438 U.S. at 171.  "Therefore, where the police conduct a search pursuant to a judicially sanctioned warrant," the defendant will rebut the presumption of validity only if he proves "the warrant is illegal or invalid."  Id. (citations omitted).  Because "the Fourth Amendment demands a factual showing sufficient to comprise probable cause, the obvious assumption is that there will be a truthful showing."  Franks, 438 U.S. at 164-65 (citation omitted).  "This does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct . . . [b]ut surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true."  Id. at 165.

"Allegations of negligence or innocent mistake are insufficient" to warrant a hearing on the issue.  Id. at 171.  Rather, to successfully attack an otherwise properly issued and executed search warrant, the defendant must plead "allegations of *deliberate falsehood* or of *reckless disregard for the truth*, and those allegations must be accompanied by an offer of proof."  Id. (emphases added).  That is, the defendant must aver in his motion and establish to the satisfaction of the trial court at any subsequent hearing that "the magistrate or judge in issuing the warrant was misled by information in an affidavit that the affiant [either] *knew* was false or *would have known* was false except for his reckless disregard for the truth."  Leon, 468 U.S. at

923 (emphases added) (citation omitted). "The mere fact that the affiant did not list every conceivable conclusion does not taint the validity of the affidavit. . . . Franks protects [only] against omissions that are *designed to mislead*, or that are made in *reckless disregard of whether they would mislead*, the magistrate." United States v. Colkley, 899 F.2d 297, 301 (4th Cir. 1990) (emphases in original) (citations omitted). The defendant must also show "that the falsehood or omission negated the basis upon which the probable cause determination was made." Gregory v. Commonwealth, 46 Va. App. 683, 694, 621 S.E.2d 162, 168 (2005).

These standards are in keeping with the principle that "the Fourth Amendment 'probable cause' test requires not absolute certainty but only that the government have good reason for believing in the existence of the necessary facts." 2 Wayne R. LaFave, Jerold H. Israel & Nancy J. King, Criminal Procedure § 3.4(d), at 129 (2d ed. 1999). They are also "consistent with the remedial purpose of the exclusionary rule, 'to deter police *misconduct* by denying illegally obtained evidence from being admitted in [a] defendant's criminal trial.'" Williams v. Commonwealth, 26 Va. App. 612, 618, 496 S.E.2d 113, 116 (1998) (emphasis in original) (quoting Johnson v. Commonwealth, 21 Va. App. 172, 175, 462 S.E.2d 907, 909 (1995)). Ultimately, whether an officer acted in reckless disregard for the truth is a question of fact, and we will not reverse the trial court's finding unless it is "plainly wrong" or without evidence to support it. West v. Commonwealth, 16 Va. App. 679, 690, 432 S.E.2d 730, 737 (1993). However, we review *de novo* "whether misstatements and omissions are material to the finding of probable cause." United States v. Dozier, 844 F.2d 701, 705 (9th Cir. 1988).

Although Franks and its progeny require a specific motion and an offer of proof from the defendant before a hearing on the veracity of the information contained in an affidavit for a search warrant may be held, this Court has not strictly enforced that requirement. Thus, in this case, as we have done in numerous prior cases where the Commonwealth has failed to object to

the procedures followed in the trial court, "we treat the hearing on [appellees'] motion[s] to suppress as a <u>Franks</u> hearing, despite the absence of 'any *preliminary* showing' by [appellees] of police misconduct." <u>Williams</u>, 26 Va. App. at 617, 496 S.E.2d at 115 (emphasis in original) (quoting <u>West</u>, 16 Va. App. at 689, 432 S.E.2d at 737). Applying the <u>Franks</u> standard to the record before us, we conclude that the record in this case does not support the trial court's factual finding that the information in Porter's affidavit, obtained from the public records of the Louisa County Assessor regarding the square footage of the target residence, was made "in reckless disregard of whether it would mislead, the magistrate." Although the trial court stated it was "troubled" by what it considered to be a "great deal of recklessness," the trial court specified only one reason in support of its finding that Porter deliberately or recklessly misled the magistrate into issuing the search warrant; namely, that a picture of the subject home depicted a residence that "would *appear* to be substantially larger than 2,106 feet" and thus implicitly, the trial court apparently concluded that the electricity usage referred to in the affidavit did not corroborate the unnamed informants' information. [3]

Nothing in the record, however, suggests that Porter knew or should have known that the target house was, in actuality, more than 2,106 square feet. Porter, unlike McCumber, could not

---

[3] As noted, the trial court expressly found that the mathematical error contained in the affidavit pertaining to the kilowatt usage on the property was "not intentional." Moreover, we note that the trial court made no additional factual finding with respect to the 2nd unnamed informant's misdemeanor criminal record. The record does not reflect whether the misdemeanor conviction was for a crime of moral turpitude which might impact the informant's credibility, and in the absence of that information in the record, while we certainly do not condone his failure to do so, Porter's failure to verify the informants' background information until after the warrant was obtained, while clearly negligent, does not amount to recklessness. Finally, we have examined the photographic exhibits depicting the target house and the houses used for comparison purposes, and we conclude that these exhibits do not support the conclusion of the trial court that the target house "appears to be substantially larger than 2,106 square feet" from the road from which Porter was able to view it without trespassing upon the property or indeed is so radically different in size from the comparison houses as to make it obvious that any reliance on them would constitute recklessness on the part of Porter in evaluating their relative electricity usage.

in his capacity as a police officer enter the house in order to measure it before requesting the search warrant. In fact, Porter testified without contradiction that he could not possibly accurately determine the square footage on the house unless he could "walk up to the building . . . with a tape measure," and the fact that McCumber's testimony to a different determination of the square footage was based upon a room-by-room measurement actually corroborated Porter's testimony in that regard. Porter, likewise, could not accurately measure the square footage on either of the houses used for comparison absent permission or obtaining search warrants. Moreover, since "[t]he Fourth Amendment protects the curtilage of a house," it would be presumptively unreasonable for Porter to have entered any of these properties to conduct what itself would amount to a warrantless search within any of the protected areas of each dwelling to further his investigation. Robinson v. Commonwealth, 273 Va. 26, 34, 639 S.E.2d 217, 221 (2007) (citations omitted). Thus, insofar as determining whether the electricity usage was sufficiently high as to corroborate the information provided by the informants, Porter could either observe these properties from a significant distance, from which the square footage could not accurately be determined, or he could utilize public records for that purpose.

To that end, we note that the photographs of the target house admitted as defense exhibits, upon which the trial court relied in rendering its decision, are not sufficiently dissimilar in depicting relative size of the target house and the houses used for comparison purposes at 3767 Goldmine Road and 5100 Bibb Store Road. These photographs only show the front elevation exterior of the properties and give no indication, in and of themselves, as to the square footage of the interior living spaces. Because Porter could not reasonably ascertain the square footage, by comparison or otherwise, on the target property merely from outward observation, it was not unreasonable as a matter of law for him to rely upon the county assessor's records to determine the square footage. Indeed, though "[a]ll recognize that assessment of property is not

an exact science," <u>Southern R. Co. v. Commonwealth</u>, 211 Va. 210, 214, 176 S.E.2d 578, 580 (1970), county tax assessments, in the absence of "a showing of manifest error or total disregard of controlling evidence," are presumptively valid, <u>Smith v. Board of Supervisors of Fairfax County</u>, 234 Va. 250, 257, 361 S.E.2d 351, 355 (1987).

Here, the tax assessment itself is not the issue, but rather the county's records upon which that assessment is ultimately based. The public officials of the county rely upon the accuracy of those records to determine a homeowner's tax liability and, in the absence of any other consideration, it is not unreasonable, much less reckless, for other public officials to rely on them as well. Put another way, in the absence of evidence that Porter knew, or should have known, that the public records were false or grossly inaccurate, it was not reckless for Porter to include their content in his affidavit. This record contains no such evidence that Porter acted in bad faith.

For these reasons, we hold Porter's failure to alert the magistrate to the possibility that the house contained more square footage than that which was reported in the county assessor's office was, at best, merely negligent rather than deliberately false or reckless. Porter's assertion that the house was 2,106 square feet was based upon his search of a public record. Porter testified without contradiction that without trespassing upon the property, he had no other way of determining the square footage on the property. "In the absence of clear evidence to the contrary, courts may presume that public officers have discharged their official duties." <u>Robertson v. Commonwealth</u>, 12 Va. App. 854, 856-57, 406 S.E.2d 417-18 (1991) (citation omitted). McCumber's testimony that the house contains over 4,000 square feet does not alter our analysis. McCumber was given access to the interior of the property to make measurements of it, and he conceded that he included in his measurements a screened-in porch and a workshop as livable space, even though the porch had only three walls, and the workshop "wasn't used as

living space, it was used as work space." McCumber also included the basement in his measurements, even though the basement was located under the main part of the house and not visible to someone observing the house from the outside. Finally, McCumber acknowledged that he did not look at the county tax assessment records because "apparently they assess it differently from me."

Because the record does not support the trial court's factual finding that Porter exhibited reckless disregard for the truth so as to mislead the magistrate into issuing the warrant, we find the trial court erred in excising the relevant information from the affidavit. As the trial court found, with this information pertaining to the kilowatt usage on the property included, the affidavit sufficiently supported the magistrate's conclusion that there was probable cause to believe appellees were maintaining a continuous marijuana grow operation on the property. It follows that, if the issuance of the search warrant rested upon a valid affidavit supporting probable cause, the trial court erred in granting appellees' motions to suppress.[4] We, therefore, reverse the trial court and remand the matter for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>

---

[4] As noted above, if the search warrant and supporting affidavit are considered with this information included, the magistrate could properly conclude that the information provided by the informants was corroborated and was not stale. See United States v. Farmer, 370 F.3d 435, 439 (4th Cir. 2004) ("[T]he vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit. . . . Rather, we must look to all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized." (citations omitted)); See also Pierceall v. Commonwealth, 218 Va. 1016, 1021, 243 S.E.2d 222, 225 (1978) ("[C]ircumstances occurring substantially before the issuance of a search warrant can justify the issuance of the warrant only if such past circumstances disclose 'a probable cause' of continuous nature so as to support a rational conclusion that the past probable cause is still operative at the time of the issuance of the warrant.").