COURT OF APPEALS OF VIRGINIA

Present:   Judges Malveaux, Athey and Senior Judge Humphreys
Argued at Lexington, Virginia

**PUBLISHED**

ROBERT MATTHEW CALDWELL

                                                          OPINION BY
v.        Record No. 1099-24-3          JUDGE MARY BENNETT MALVEAUX
                                                          OCTOBER 21, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
Colin R. Gibb, Judge Designate

Jessiah S. Hulle (Naomi R. Huntington; Huntington, Huntington &
Huntington, on brief), for appellant.

Kelly L. Sturman, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial, the trial court convicted Robert Matthew Caldwell ("appellant") of

driving under the influence of drugs, third or subsequent offense within ten years, in violation of

Code §§ 18.2-266 and -270.  On appeal, he argues that the trial court erred by overruling his

objection to the identification of Kelly Patteson as a nurse who was qualified to withdraw blood

pursuant to Code § 18.2-268.5.  Appellant also contends that the court erred by admitting a

certificate of analysis without the testimony of Patteson, the person who performed the blood draw.

For the following reasons, we affirm.

## I.  BACKGROUND

At around 1:00 a.m., Lieutenant Donald J. Kirker, Jr. of the Montgomery County

Sheriff's Office saw a car driving erratically on one road before pulling off onto the side of

another road.  Kirker checked the car's registration and found that it had expired.  He then

conducted a traffic stop and discovered that the driver, appellant, had an outstanding warrant for a probation violation and was driving on a revoked license.

When Kirker questioned appellant about drugs, appellant admitted that he was in possession of methamphetamine. During a search of appellant, Kirker found a pack of cigarettes containing a bag of white crystals, consistent with methamphetamine, inside appellant's left pocket. Appellant also admitted that there was more methamphetamine inside his car and explained to Kirker that he sometimes sold "a little" methamphetamine to support his own use. In the car, Kirker found a baggie containing suspected methamphetamine along with a smoking device, two cellphones, multiple scales in multiple bags, and multiple syringes in multiple bags. Appellant told Kirker that he had used methamphetamine the previous evening.

Kirker had appellant perform field sobriety tests. On the Modified Romberg Test, which is designed to "detect stimulants such as methamphetamine," appellant's demeanor indicated "a sped up perception of time consistent with methamphetamine use." Kirker arrested appellant for driving under the influence and drove him to a hospital to obtain a blood draw.

Pursuant to Code §§ 19.2-187 and -187.1, the Commonwealth filed a pretrial notice that it intended to offer into evidence a certificate of analysis pertaining to the blood draw. In response, appellant filed a motion, pursuant to Code § 19.2-187.1, objecting to the admission of the certificate of analysis.

At trial, Kirker related the circumstances regarding his roadside encounter with appellant. The Commonwealth then asked Kirker, "And who was the nurse that did the blood draw?" Counsel for appellant objected, arguing that Kirker "can't say whether or not she's a nurse. He has no . . . idea about her qualifications and if they are they're hearsay." The Commonwealth offered to lay a foundation for the testimony, asking Kirker, "When you went to the hospital, who did . . . you meet there?" Kirker responded, without objection, "Kelly Patteson." When

asked what Patteson was wearing, Kirker stated, "She appeared that she worked there. I don't know exactly what she was wearing." The trial court then admitted into evidence a Montgomery County Circuit Court order listing the names of technicians or nurses that were designated to withdraw blood samples pursuant to Code § 18.2-268.5. Kelly Patteson's name was included in the order.

Kirker testified that he observed Patteson conduct the blood draw. He also testified that, due to his training and experience, he was familiar with a Virginia Department of Forensic Science ("DFS") "kit." He stated that he was "a DUI instructor" that had arrested multiple people in DUI drug cases and that he "used the exact same kits in every single one of" those cases. He testified that Patteson used the items from the DFS kit to perform the blood draw. Kirker received two vials of appellant's blood, sealed by Patteson, and then submitted them to the lab for analysis.

The Commonwealth moved to admit the certificate of analysis regarding appellant's blood draw. Appellant objected, arguing that it was necessary to have the person who had conducted the blood draw testify at trial in order to admit the certificate of analysis into evidence. The trial court overruled the objection and admitted the certificate of analysis.

The certificate of analysis contained the conclusion of Dr. Ashton Lesiak, the DFS toxicologist who had performed the analysis, that appellant's blood contained methamphetamine at 1.6 milligrams per liter +/- 0.2 milligram per liter. Lesiak later testified at trial, stating that the level of methamphetamine in appellant's blood was "high" and that it was "possible that at this level there might be effects that could cause incoordination and more risk taking behavior."

The certificate of analysis also included a blood withdrawal certificate affixed onto the first page of the certificate. This certificate included appellant's name, Kirker's name, and the date and time of the blood draw. The certificate also included the language, "I certify that the

blood in the vial to which this Certificate is attached was withdrawn from the above named accused. I am qualified pursuant to [Code] § 18.2-268.5 to withdraw blood & the blood was taken in compliance with [Code] § 18.2-268.5." Patteson's signed name appeared beneath this statement.

After the Commonwealth rested, counsel for appellant again argued to the trial court that the certificate of analysis was inadmissible. After overruling the objection, the trial court took the matter under advisement for counsel to submit additional briefs on the issue.

In appellant's memorandum in support of excluding the blood draw results, he argued that the certificate of analysis was a type of testimonial evidence subject to the Confrontation Clause and that because appellant "was unable to cross-examine Ms. Patteson regarding her qualifications, the procedures she used, the use of the instrument to draw the blood, whether or not she used soap or some other chemical to perform the blood draw, and to explore other issues," the blood test results were inadmissible. He also argued that "[t]he record of who drew the blood is akin to an affidavit (i.e. certificate of analysis) and must be tested by cross examination." In response, the Commonwealth argued that the Supreme Court's decision in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), did not extend the Confrontation Clause to the individual who extracts a blood sample. It further argued that there was no evidence of noncompliance with the statutory requirements for blood draws.

After receiving additional briefing, the trial court again rejected appellant's argument that the certificate of analysis was inadmissible and convicted appellant of driving under the influence of drugs, third or subsequent offense within ten years.

This appeal followed.

ANALYSIS

I. Personal Knowledge

Appellant first argues that the trial court erred by admitting into evidence Lieutenant Kirker's identification of Kelly Patteson as a nurse who was qualified to draw blood pursuant to Code § 18.2-268.5, because Patteson was not present to testify and Kirker did not have personal knowledge of her identity or qualifications.

Determining the "'admissibility of evidence is within the discretion of the trial court,' and an appellate court will not reject such decision absent an 'abuse of discretion.'" *Williams v. Commonwealth*, 71 Va. App. 462, 487 (2020) (quoting *Tirado v. Commonwealth*, 296 Va. 15, 26 (2018)). "[T]o the extent the trial court makes an error of law in the admission of evidence, 'an abuse of discretion occurs,'" *Abney v. Commonwealth*, 51 Va. App. 337, 345 (2008) (quoting *Bass v. Commonwealth*, 31 Va. App. 373, 382 (2000)), and thus, "evidentiary issues presenting a 'question of law' are 'reviewed *de novo* by this Court,'" *id.* (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006)). To the extent this analysis requires interpretation of "statute[s] or the Rules of the Supreme Court, these are questions of law . . . review[ed] de novo." *Commonwealth v. Herring*, 288 Va. 59, 66 (2014) (quoting *Woodard v. Commonwealth*, 287 Va. 276, 280 (2014)).

Virginia Rule of Evidence 2:602 states that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." "The Supreme Court of Virginia has defined 'personal knowledge' as 'knowledge of a fact which a person has himself gained through his own senses and not from others or from information supplied by others.'" *Bowman v. Commonwealth*, 28 Va. App. 204, 210 (1998) (quoting *Fagan v. Commonwealth*, 220 Va. 692, 694 (1980)). "It is 'knowledge of the truth in

regard to a particular fact or allegation, which is original, and does not depend on information or hearsay.'" *Id.* (quoting *Fagan*, 220 Va. at 694).

"Code § 18.2-268.5 lists those persons authorized to withdraw blood for purposes of determining the blood [intoxicant] level of a person charged with driving while intoxicated." *Coffman v. Commonwealth*, 67 Va. App. 163, 167 (2017). The statute specifically provides that "only a physician, registered nurse, licensed practical nurse, phlebotomist, graduate laboratory technician or a technician or nurse designated by order of a circuit court acting upon the recommendation of a licensed physician . . . shall withdraw blood for the purpose of determining its . . . alcohol and drug content." Code § 18.2-268.5.

As an initial matter, we disagree with appellant's characterization of the evidence admitted at trial. In his assignment of error, he argues that the trial court erred in overruling his "objection to the identification of Ms. Kelly Patteson, by Lieutenant Kirker, as a nurse who was qualified to draw blood pursuant to statute." But Kirker did not identify Patteson as a nurse qualified to draw blood pursuant to Code § 18.2-268.5. He merely testified, without objection, that Patteson was the person he met at the hospital. Following this testimony, a circuit court order listing names of technicians or nurses designated to withdraw blood samples pursuant to Code § 18.2-268.5 was admitted into evidence, also without objection. The order listed Patteson as an individual qualified to conduct blood draws pursuant to that statute. So while appellant argues that the trial court erred in allowing Kirker to identify Patteson as a nurse qualified to withdraw blood under Code § 18.2-268.5, the evidence presented at trial was only that Kirker met Patteson at the hospital and that her name was on a court order listing individuals qualified to withdraw blood pursuant to the statute.

Turning back to his assignment of error, appellant asserts that Kirker's testimony violated Rule 2:602 because he did not have personal knowledge of Patteson's identity or qualifications.

- 6 -

Regarding her identity, at trial, appellant did not object to Kirker's testimony that he met Kelly Patteson at the hospital. Because appellant failed to object to the testimony he now challenges on appeal, he has waived any argument concerning this testimony. *See* Rule 5A:18. With respect to her qualifications, contrary to appellant's assertion, Kirker did not testify as to whether Patteson was qualified to withdraw blood under Code § 18.2-268.5. And this testimony was not needed. The Commonwealth's evidence demonstrated that Patteson was qualified to draw blood under Code § 18.2-268.5 because her name was listed on a circuit court order designating her as a person qualified to do so under the statute.

But appellant contends that we cannot rely on the circuit court order in concluding that Patteson was qualified to conduct a blood draw under Code § 18.2-268.5, asserting that "[t]he fact that a person's name is on the list does not mean that the Commonwealth has met its burden to establish that the person who conducted the blood draw is the same person whose name was on the list." We again disagree.

"The proponent of the evidence bears the burden of establishing . . . the facts necessary to support its admissibility." *Perry v. Commonwealth*, 61 Va. App. 502, 509 (2013) (quoting *Bell v. Commonwealth*, 49 Va. App. 570, 576 (2007)). "The measure of the burden of proof with respect to factual questions underlying the admissibility of evidence is proof by a preponderance of the evidence." *Atkins v. Commonwealth*, 68 Va. App. 1, 9 (2017) (quoting *Bloom v. Commonwealth*, 262 Va. 814, 821 (2001)). "Once this threshold for proving admissibility has been met, any gaps in the evidence are relevant to the trier of fact's assessment of its weight rather than its admissibility." *Church v. Commonwealth*, 71 Va. App. 107, 122-23 (2019).

In this case, Kirker testified that he met Patteson at the hospital, and the circuit court order admitted into evidence had Patteson's name listed as a person that was designated to withdraw blood samples pursuant to Code § 18.2-268.5. Through this testimony and order, the

Commonwealth established by a preponderance of the evidence that the person Kirker met at the hospital was the person named in the court order. Any "gaps in the evidence" as to whether the Kelly Patteson that Kirker met at the hospital was in fact the Kelly Patteson named in the court order was relevant only to the weight of the evidence, not its admissibility. *Church*, 71 Va. App. at 122. Accordingly, we hold that the trial court did not err in admitting Kirker's testimony concerning Patteson, when Kirker testified without objection that he met Patteson at the hospital, and Patteson was named in the circuit court order as an individual qualified to withdraw blood under Code § 18.2-268.5.

## II. Admission of the Certificate of Analysis

Appellant contends that the trial court erred by admitting the certificate of analysis containing his blood draw results without the testimony of the person who performed the blood draw, Patteson, because doing so violated the Confrontation Clause of the Sixth Amendment.[1]

Appellate courts "review[] de novo whether the admission of evidence violates a defendant's confrontation right." *Logan v. Commonwealth*, 299 Va. 741, 745 (2021). In addition, this Court "consider[s] the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth, the prevailing party at trial." *Id.* (quoting *Crawford v. Commonwealth*, 281 Va. 84, 97 (2011)).

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him." U.S. Const. amend. VI. "In operation, the Clause protects a defendant's right of cross-examination by limiting the prosecution's ability to introduce statements made by people not in the courtroom." *Smith v. Arizona*, 602 U.S. 779, 783-84 (2024). But this protection is not without limits. "To implicate

---

[1] Appellant only alleges a violation of his confrontation rights under the federal Constitution, so we do not address any arguments regarding the Virginia Constitution's Confrontation Clause. *See* Va. Const. art. I, § 8.

the Confrontation Clause, a statement must be hearsay ('for the truth') and it must be testimonial—and those two issues are separate from each other." *Id.* at 800.

In this case, the dispute turns on whether the statements made by Patteson on the blood withdrawal certificate were testimonial in nature.[2] In evaluating whether a statement is testimonial, our inquiry "focuses on the 'primary purpose' of the statement, and in particular on how it relates to a future criminal proceeding." *Id.* (quoting *Davis v. Washington*, 547 U.S. 813, 822 (2006)). "A court must therefore identify the out-of-court statement introduced, and must determine, given all the 'relevant circumstances,' the principal reason it was made." *Id.* at 800-01 (quoting *Michigan v. Bryant*, 562 U.S. 344, 369 (2011)). "[T]he relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." *Bryant*, 562 U.S. at 360. "[A] statement cannot fall within the Confrontation Clause unless its *primary* purpose was testimonial." *Cody v. Commonwealth*, 68 Va. App. 638, 658 (2018) (alteration in original) (quoting *Ohio v. Clark*, 576 U.S. 237, 246 (2015)). To be considered testimonial, "the document's primary purpose must have 'a focus on court.'" *Smith*, 602 U.S. at 802; *see also Canada v. Commonwealth*, 75 Va. App. 367, 383 (2022) (determining whether a statement was testimonial by asking if the primary purpose was to create "a substitute for trial testimony").

The United States Supreme Court has addressed this issue in the context of certificates of analysis reporting the results of forensic tests. In *Melendez-Diaz*, at trial, the prosecution introduced three certificates of analysis establishing that substances seized by the police

---

[2] Because we conclude that Patteson's statements on the certificate of analysis were nontestimonial in nature, we need not address whether the statements were also hearsay. "The doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Flowers v. Commonwealth*, 84 Va. App. 143, 162 n.6 (2025) (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017)).

- 9 -

contained cocaine.  557 U.S. at 308.  Pursuant to Massachusetts state law, the certificates served "as 'prima facie evidence of the composition, quality, and the net weight'" of the substances analyzed.  *Id.* at 309.  Although the forensic analysts who tested the substances swore to the certificates before a notary public as required by the statute, they did not testify at trial.  *Id.* at 308-09.  The defendant objected to the admission of the certificates, asserting that the Sixth Amendment required the analysts to testify in person.  *Id.* at 309.

The Supreme Court agreed with the defendant, holding that the certificates were testimonial because of their "evidentiary purpose."  *Id.* at 311; *see also Smith*, 602 U.S. at 785 (noting that the certificates in *Melendez-Diaz* were testimonial because "[t]hey had an 'evidentiary purpose,' identical to the one served had the analysts given 'live, in-court testimony'" (quoting *Melendez-Diaz*, 557 U.S. at 311)).  The evidentiary purpose of the certificates was clear, as "under Massachusetts law the *sole purpose* of the affidavits was to provide 'prima facie evidence of the composition, quality, and the net weight' of the analyzed substance."  *Melendez-Diaz*, 557 U.S. at 311 (quoting Mass. Gen. Laws, ch. 111, § 13).  The Court therefore held that the "analysts' affidavits were testimonial statements, and the analysts were 'witnesses' for purposes of the Sixth Amendment."  *Id.*  The Court also specifically noted that it did not hold "that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case."  *Id.* at 311 n.1.  While acknowledging that the prosecution must establish the chain of custody, the Court held that "this does not mean that everyone who laid hands on the evidence must be called."  *Id.*

Turning back to the issue before us, a blood withdrawal certificate was affixed to the certificate of analysis showing the results of the analysis of the contents of appellant's blood on the night in question.  The blood withdrawal certificate included appellant's name, the date and

time of the blood draw, and the name of the officer involved.  On it, Patteson certified that she was the person who had conducted the blood draw and that she was qualified to do so under Code § 18.2-268.5.  She also certified that the blood draw was done in compliance with that statute.  Code § 18.2-268.5 provides that the person withdrawing blood do so in a certain manner: it must be done with "soap and water, polyvinylpyrrolidone iodine, pvp iodine, povidone iodine or benzalkonium chloride to cleanse the part of the body" from which blood is drawn and with "instruments sterilized by the accepted steam sterilizer or some other sterilizer which will not affect the accuracy of the test, or using chemically clean sterile disposable syringes."

Relying on *Melendez-Diaz*, appellant argues that a certificate of blood withdrawal is "an attestation that certain procedures related to the acquisition of blood had been followed," and because "the individuals who sign the certificate of withdrawal are preparing evidence for trial, they are preparing testimonial statements."  Thus, according to appellant, the individual who conducts and certifies a blood draw must later be in court and available for cross-examination to satisfy the Confrontation Clause.

Rejecting this argument, we find no Confrontation Clause violation because the statements made on the blood withdrawal certificate were not testimonial in nature.  Here, unlike in *Melendez-Diaz*, Patteson was not the analyst who conducted testing on appellant's blood to determine whether it contained certain substances.  Rather, she only collected the sample that was later analyzed, first by drawing the blood, and then by placing and sealing it in a specified container before giving it to Kirker, who then sent it to DFS for analysis.  Patteson played no part in any scientific analysis of the blood sample, the result of which was the evidence used to convict appellant of driving under the influence of drugs.

Instead, Patteson's role in collecting the blood sample was simply to perform a preliminary step to secure a blood sample suitable for analysis. Patteson's statements on the blood withdrawal certificate—that she was qualified to draw blood and that she did so using a method provided by Code § 18.2-268.5—were not for an evidentiary purpose, but rather to convey that the blood was withdrawn in an appropriate manner that secured a sample suitable for accurate testing. To be sure, some statements made on certificates of analysis are testimonial because their primary purpose is an evidentiary one. Such is the case here, when the DFS analyst, Dr. Lesiak, reported that appellant's blood contained methamphetamine at 1.6 milligrams per liter +/- 0.2 milligram per liter on the certificate of analysis. *See Melendez-Diaz*, 557 U.S. at 311 (holding that analyst's conclusion contained in an affidavit that a substance was cocaine was a testimonial statement because the sole purpose of the affidavits was evidentiary, to provide evidence of the composition, quality, and the net weight of the analyzed substance). But others, such as "lab records" written "to comply with laboratory accreditation requirements or to facilitate internal review and quality control" serve no evidentiary purpose and are not testimonial. *Smith*, 602 Va. at 802. Here, Patteson's statements were only probative as to the quality control of the blood sample, rather than as to the scientific analysis conducted on the sample.

Instead of providing evidence concerning the analysis of the blood sample's contents, Patteson's statements concerned only the sample's suitability for analysis, and served to demonstrate her compliance with statutory requirements concerning the quality control of samples. Our Supreme Court has held, in similar circumstances, that a statement made to show compliance with a statute demonstrates that the primary purpose of the statement is nontestimonial. In *Logan*, the defendant argued that the return of service on a preliminary protective order, which included the serving deputy's signature and time and date of service, was

- 12 -

a testimonial statement because "the Commonwealth introduced this statement at trial to prove an element of the crime of violation of a protection order—that he had notice that he was subject to a protective order." 299 Va. at 746. The Court disagreed, concluding that "the primary purpose of a return of service on a protective order is administrative." *Id.* The Court noted that "[t]o effect service, the deputy was required to sign and date the return of service under Code § 8.01-296(2)(c)," a statute requiring process servers to "note the manner and the date of service on the original and the copy of the process so delivered or posted under this subdivision." *Id.* at 747, 747 n.1 (quoting Code § 8.01-296(2)(c)). Accordingly, the Court found, "[t]he return of service . . . performs a record-keeping function" and "was intended to serve a primarily administrative purpose, not to 'creat[e] an out-of-court substitute for trial testimony.'" *Id.* at 747, 748 (second alteration in original) (quoting *Clark*, 576 U.S. at 245).

Here, Patteson's statements on the blood withdrawal certificate were the same type of record-keeping statements serving an administrative purpose. Her statements indicated that she was a person qualified to draw blood pursuant to Code § 18.2-268.5 and that she did so in compliance with the requirements of that statute. Her statements were not accusatory in nature; rather, they merely recited that Patteson had followed a procedure ensuring the quality of the sample provided to the DFS analyst.[3]

---

[3] In support of his argument that the statements on the blood withdrawal certificate were testimonial, appellant directs this Court to *Grant v. Commonwealth*, 54 Va. App. 714 (2009). But that case instead illuminates why the challenged statements here are nontestimonial. *Grant* involved statements made on a certificate of the results of a chemical analysis of the defendant's breath that indicated his blood alcohol level. *Id.* at 716. On the attestation clause contained in the certificate of analysis, the breath test operator, who did not testify at trial, certified as to the accuracy of the test and that the test was conducted pursuant to DFS regulations. *Id.* at 720 n.3. The defendant argued that the certificate should have been excluded because the breath test operator was not available for cross-examination at trial. *Id.* at 719 n.2. Our Court agreed, holding that the statements made on the certificate were testimonial in nature. *Id.* at 720. We held that the attestation clause on the certificate of analysis "was designed to be used exactly like the certificate at issue in *Melendez-Diaz*--to prove facts essential to the prosecution that would

As the Supreme Court stated in *Melendez-Diaz*, not "anyone whose testimony may be relevant in establishing the chain of custody, *authenticity of the sample*, or accuracy of the testing device, must appear in person as part of the prosecution's case." 557 U.S. at 311 n.1 (emphasis added). Our own Supreme Court has reiterated that conclusion, also noting that "the Sixth Amendment does not require that every person who had some role in performing a forensic analysis, or whose work upon which the ultimate conclusions depend, testify at trial." *Aguilar v. Commonwealth*, 280 Va. 322, 335 (2010). The dispositive question is whether Patteson's statements, viewed in the totality of the relevant circumstances, were testimonial in nature. *Smith*, 602 U.S. at 800-01 (noting that in determining the primary purpose of a statement, the court "must determine, given all the 'relevant circumstances,' the principal reason it was made" (quoting *Bryant*, 562 U.S. at 369)). Here, considering all of the circumstances, Patteson's statements on the certificate of withdrawal were not made with the purpose of providing evidence against appellant at trial; rather, her statements simply showed her compliance with Code § 18.2-268.5 to ensure the accuracy of the blood sample so that it was suitable for analysis. To be considered testimonial, "the document's primary purpose must have 'a focus on court,'" *id.* at 802, and here, that is not the case. Accordingly, the trial court did not abuse its discretion in admitting the certificate of analysis containing Patteson's statements without her presence at

otherwise have to be proved by live, in-court testimony: that the breath test was administered by a licensed operator in accordance with" DFS regulations. *Id.* at 723.

In *Grant*, what was at issue was the attestation on the certificate of analysis of the person who conducted the scientific testing. The breath test operator was necessary for in-court cross-examination because he conducted the actual analysis providing the evidence against the defendant: the alcohol content of the defendant's blood as determined by a breath test. The attestations contained on the certificate of analysis in *Grant* are therefore distinguishable in a crucial aspect from the certifications made by Patteson on the blood withdrawal certificate—the breath test operator in *Grant* conducted the analysis at issue, clearly for an evidentiary purpose, while Patteson simply provided a sample for a later analysis that she took no part in.

trial, because the admission of these nontestimonial statements did not violate the protections of the Confrontation Clause.

CONCLUSION

We hold that the trial court did not err in admitting testimony regarding Patteson's identity. We also hold that it did not err in admitting the certificate of analysis without Patteson's testimony. Accordingly, we affirm the judgment of the trial court.

*Affirmed.*